ALLAN L. NEUSTADTER

v.

COMMONWEALTH OF VIRGINIA

No. 0377-88-4

Decided April 9, 1991*

---

* Petition for rehearing granted April 25, 1991.

COUNSEL

John Kenneth Zwerling (Michael S. Lieberman; Zwerling, Mark, Sutherlund, Ginsberg & Lieberman, P.C., on briefs), for appellant.

Richard A. Conway, Assistant Attorney General (Mary Sue Terry, Attorney General, on brief), for appellee.

OPINION

WILLIS, J.—In *Franks v. Delaware*, 438 U.S. 154 (1978), the Supreme Court of the United States held:

> Where the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the alleged false statement is necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request. In the event that at that hearing the allegation of perjury or reckless disregard is established by the defendant by a preponderance of the evidence, and, with the affidavit's false material set to one side, the affidavit's remaining content is insufficient to establish probable cause, the search warrant must be voided and the fruits of the search excluded to the same extent as if probable cause was lacking on the face of the affidavit.

*Id.* at 155-56.

The appellant, Allan Neustadter, was convicted of possession of cocaine with intent to distribute it after entering a conditional plea of guilty. The cocaine was discovered upon the execution of a search warrant for his home. He contends that he made the substantial preliminary showing required by *Franks*, and that the trial court erred in denying his motion for an evidentiary hearing. However, relying on *United States v. Paradis*, 802 F.2d 553 (1st Cir. 1986), the trial court denied the motion, holding that "[e]ven were the Court to assume, without deciding, that the affidavit knowingly, intentionally or in reckless disregard of the truth, omitted certain facts from the affidavit, those omissions were not

necessary to sustain a finding of probable cause." We agree and affirm.

Based on information provided in an affidavit by Investigator Poppa of the Loudoun County Sheriff's Department, a search warrant was issued for Neustadter's home. The subsequent search produced over 100 grams of cocaine, a cutting agent, a sifting device, and a set of triple beam scales. In his affidavit, after describing his experience with narcotics, Investigator Poppa swore to the following:

> During September of 1983, Sgt. Rick diDerega, then assigned to the Narcotics Unit of the Loudoun County Sheriff's Department, received information from a confidential informant that Allan L. Neustadter, who resides at the "Old Train Station" on Route 719, in the Town of Round Hill, Virginia, which is in Loudoun County, was distributing large quantities of cocaine. The informant stated that Allan L. Neustadter was the main supplier for Dale Davis, who was arrested by narcotics officers from the Loudoun County Sheriff's Department in July, 1982 for Distribution of Cocaine.

> During the first week of January 1984, your affiant investigator, Douglas A. Poppa of the Loudoun County Sheriff's Department, interviewed a confidential informant herein after referred to as "C.I.-1", who stated that it was present numerous times during 1982 - 1983 at the residence of Allan L. Neustadter, who lives at the Old Train Station in Round Hill, Virginia, and that it observed Allan L. Neustadter distributing cocaine and marijuana to numerous individuals on a regular basis from his residence.

> C.I.-1 stated to your affiant that it had observed Neustadter removing cocaine that was in rock form from paper bags and placing the rock cocaine in a machine that would grind the rocks into powder. Neustadter would then take the powdered cocaine and place it in numerous 35mm film canisters to be sold.

> C.I.-1 stated to your affiant that it also had observed Neustadter in possession of large quantities of marijuana that Neustadter kept in large bags. C.I.-1 has observed

Neustadter sell the marijuana from his residence sometimes in half pound quantities.

C.I.-1 stated to your affiant that during 1982 and 1983 when it was present at Neustadter's residence in Round Hill, it had observed Neustadter receiving cash for the sale of marijuana and cocaine. C.I. stated that Neustadter would sell a gram of cocaine for $100.00 and a "lid" of marijuana for $50.00. C.I.-1 stated that Neustadter would also sell the cocaine in quarter ounce quantity but, the C.I. did not know the price.

During September of 1986, Sgt. Jeff Brown, of the Loudoun County Sheriff's Department, spoke to a confidential informant, herein after referred to as "C.I.-2". C.I.-2 stated to Sgt. Brown that it has obtained cocaine from Bobby Lee Rawlings over the past eighteen months, who resides in Clarke County, Virginia, and that C.I.-2 was told by Rawlings' wife, Lori, that Bobby Lee's "connection" is a subject named "Allan", who resides at the "Old Train Station" in Round Hill, Virginia.

On December 15, 1986, your affiant, along with Sgt. Jeff Brown, spoke with Bobby Rawlings in Loudoun County, Virginia. Rawlings stated that he has purchased one half ounce quantity of cocaine at a time from Allan Neustadter at his residence at the Old Train Station in Round Hill, Virginia during 1985 and 1986 for $1,050.00 per one half ounce. Rawlings stated that this occurred, at least, twenty-four times. Rawlings stated he usually called up Neustadter on the phone and asked him if he could come over and if Neustadter replied "yes" that meant that the cocaine would be there. Rawlings stated that on Thursday, December 11, 1986, in the afternoon, he purchased one half ounce of cocaine from Neustadter at his residence and paid Neustadter $1,050.00 for it.

Your affiant believes that based on the statement that Bobby Lee Rawlings made to your affiant and Sgt. Jeff Brown on December 15, 1986, that it verifies what your affiant was told by C.I.-1 during 1984 and what Sgt. Brown was told by C.I.-2 during September 1986. Your affiant was told by C.I.-1 that it will testify in court if needed against Allan

L. Neustadter. Both C.I.-1 and C.I.-2 have made statements against penal interests.

In addition, Investigator Poppa also noted that he received a copy of the deed to the Old Train Station property, which showed that Neustadter purchased it in May 1980. The Department of Motor Vehicles' records reflect that Neustadter's address is the same as the Old Train Station's address.

In support of his motion for a *Franks* hearing, Neustadter filed an affidavit by Dale Davis. Davis swore that subsequent to his 1982 arrest he was questioned by the police concerning his cocaine dealings. He swore that, if he had been asked, he would have told the police that Neustadter was not his source for cocaine because he had never met him or purchased cocaine from him. Neustadter filed affidavits that Poppa's informants, identified as C.I.-1 and C.I.-2, had not made statements against their penal interests because they had been promised immunity from prosecution and that Poppa knew this. He submitted an affidavit that Poppa had omitted from the search warrant affidavit information known to him to the effect that Bobby Rawlings had initially denied any drug involvement with Neustadter and had named Neustadter as his drug source only upon being promised that he would not be prosecuted if he talked, but that if he failed to talk, he (Rawlings) and his wife would be jailed and would be away from their small daughter for Christmas. The affidavit alleged that Rawlings had failed to surrender a cache of drugs to Poppa.

Neustadter contends that upon excising the "proffered false and misleading statements" and inserting the "material omission" into the search warrant affidavit, there does not remain sufficient probable cause to issue the search warrant. He argues that he was, therefore, entitled to a *Franks* hearing. He characterizes the remaining evidence in the affidavit as follows:

[s]tale information from individuals of unknown reliability (CI-1 and CI-2); stale hearsay information from an individual (the first confidential informant) of unknown reliability that is directly contradicted by a person with first hand knowledge (Davis); and coerced information from an individual (Rawlings) of unknown reliability who persistently provided exculpatory information until he was told that if he did not incriminate Neustadter, he and his wife were going to

jail, and his young daughter would become the ward of the welfare department.

We disagree with Neustadter's characterization and conclusion. Instead, we find that what remains is the account of Rawlings that he purchased cocaine from Neustadter. Rawlings gave this account reluctantly and under pressure but never repudiated it. Although the two confidential informants were shown to have nothing to lose and, therefore, no enhanced credibility, their reports were mutually corroborative and corroborated Rawlings' information. The portion of the affidavit that dealt with Dale Davis was inconsequential. The time lapse and unsubstantiation of the informant gave that report little strength. It served only to corroborate what Rawlings told Poppa and Brown. Furthermore, Poppa said that he garnered the information about Davis from an old police report and there is no suggestion that this was not true. Davis' denial did not refute the fact that the report had in truth been made to diDerega.

■ If we accept all of the appellant's allegations and set aside all that he alleges to be false or in reckless disregard of the truth, "there remains sufficient content in the warrant affidavit to support a finding of probable cause." *Franks*, 438 U.S. at 171-72. Therefore, no evidentiary hearing was required. The judgment of the trial court is affirmed.

*Affirmed.*

Keenan, J., concurred.

Benton, J., dissenting.

In *Franks v. Delaware*, 438 U.S. 154 (1978), the Supreme Court held:

[W]here the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request.

*Id.* at 155-56. Likewise, a defendant is entitled to a *Franks* hearing upon a substantial preliminary showing that the affidavit is false due to material misstatements and omissions and that, absent the false or misleading statements, the affidavit would not be sufficient to support a finding of probable cause. *See, e.g., United States v. Dennis*, 625 F.2d 782 (8th Cir. 1980); *People v. Maestas*, 204 Cal. App. 3d 1208, 252 Cal. Rptr. 739 (1988). The trial judge in this case assumed for purposes of applying the *Franks* test that Neustadter had made the substantial preliminary showing of a material omission but then denied a *Franks* hearing, ruling that those circumstances would not affect the finding of probable cause. I believe the trial judge erred in denying Neustadter a *Franks* hearing.

The Loudon County police investigator's affidavit which supported the issuance of the warrant was made in December 1986. The warrant affidavit first recited that three years prior to the issuance of the warrant a law enforcement officer received information from a confidential informant that Neustadter was distributing cocaine. The informant is said to have stated that Neustadter supplied cocaine to Dale Davis, who is described in the affidavit as having been arrested in 1982 for distribution of cocaine.

The affidavit contains no facts upon which the magistrate could determine the credibility or reliability of the informant. The informant is purported to have given the information to the police in 1983, three years prior to the police investigator's affidavit. No facts support the informant's bare allegations of events that were said to have occurred at some unspecified time prior to September 1983.

The warrant affidavit also contained an allegation that another informant, "C.I.-1," said that he was present at Neustadter's residence in 1982-83 and saw Neustadter distribute marijuana and cocaine. The affidavit contains no facts upon which the magistrate could determine the credibility or reliability of this informant. The informant's allegations are based solely upon the bare assertion that the informant observed the reported events three to four years prior to the date of the affidavit. The warrant affidavit recites that the informant made the allegations to the police in 1984, one to two years after the events are said to have occurred and two years prior to the date of the affidavit. The affidavit does not recite that "C.I.-1" is someone other than the first informant.

The warrant affidavit next recites that three months prior to the date of the affidavit, an informant, "C.I.-2," told a law enforcement officer, other than the affiant, that he had purchased cocaine from Bobby Rawlings and that Rawlings' wife had told C.I.-2 that Neustadter was Rawlings' "connection." The affidavit contains no facts upon which the magistrate could determine the credibility or reliability of this informant. The informant's allegations are based solely upon the informant's assertion that the events occurred at some unspecified time "over the past eighteen months." The affidavit does not recite that this informant is someone other than the other two informants. It also should be noted that none of the three informants is reported to have related his or her allegation to the same law enforcement officer.

The warrant affidavit recites that C.I.-1 and C.I.-2 made statements against their penal interest. However, the evidence which Neustadter offered in support of his request for a *Franks* hearing established that the informants, or informant, had been granted immunity from prosecution. Thus, the allegation concerning statements against penal interest was alleged to have been false.

Finally, the warrant affidavit recited that the day prior to the date of the affidavit, Rawlings was interrogated and said that on twenty-four occasions at some unidentified times in 1985 and 1986 he had purchased cocaine from Neustadter at his residence. In addition, it recited that Rawlings purchased cocaine four days prior to the date of the affidavit.

In support of his motion for a *Franks* hearing, Neustadter submitted an affidavit from Dale Davis that he did not know Neustadter and had not purchased cocaine from Neustadter. Davis further stated that he had been questioned by the Loudoun County authorities in 1982 after his arrest and gave them truthful information about his source of cocaine. The warrant affidavit did not disclose that Davis had previously given the police information about his source that did not implicate Neustadter.

Neustadter also offered an affidavit from Rawlings. Rawlings swore that during an hour and a half of questioning by the affiant and another officer, he "insisted that their information was wrong and that [he] had not purchased cocaine from Allan Neustadter." Rawlings further swore that, after further questioning, the officers told him that if he did not agree with their accusations he would

be charged with a cocaine offense, he and his wife would be arrested at their places of employment, and he and his wife would be jailed and separated from their infant child during Christmas. Rawlings swore that he was told that if he "confirmed their story about Alan Neustadter none of this would occur and [he and his wife] would not be prosecuted." Rawlings swore that he changed his statement because of these threats.

For purposes of this appeal we must accept, because the trial judge did, "that the affidavit knowingly, intentionally, or in reckless disregard of the truth, omitted certain facts from the affidavit." The record abundantly establishes that Neustadter made the required preliminary showing. "Clear proof" is not required in order to show entitlement to an evidentiary hearing. *People v. Garcia*, 109 Ill. App. 3d 142, 145, 440 N.E.2d 269, 272 (1982), *cert. denied*, 460 U.S. 1040 (1983).

> *Franks* . . . holds that the showing need only be preliminary. Thus, a defendant is not required to prove his charge by a preponderance of the evidence before he is entitled to an evidentiary hearing under *Franks*. It is only at the hearing itself that a defendant, aided by testimony and the crucible of cross-examination, must prove his charge by a preponderance of the evidence.

*Id.*

When a defendant has made the requisite showing, the defendant only need to establish that the "allegedly false statement is necessary to the finding of probable cause." *Franks*, 438 U.S. at 156. In cases that involve warrants obtained upon informer's tips, issues concerning the reliability of the informants are highly relevant considerations for the probable cause determination. *See, e.g., Illinois v. Gates*, 462 U.S. 213, 230 (1983). Consequently, factors bearing upon the informant's reliability must be truthfully disclosed so as to allow the issuing magistrate to determine whether the "totality of the circumstances" supports a finding of probable cause. *Gates*, 462 U.S. at 238-39. Where the magistrate has not been given all the circumstances to consider, but rather has been given just those circumstances which favor the Commonwealth's sanitized theory of probable cause, a showing of omissions and deceptions concerning informants should not be lightly regarded in determining whether a *Franks* hearing is warranted. *United States v. Boyce*, 601 F. Supp. 947, 952-54 (D. Minn.

1985).

> By reporting less than the total story, an affiant can manipulate the inferences a magistrate will draw. To allow a magistrate to be misled in such a manner could denude the probable cause requirement of all real meaning.

*United States v. Stanert*, 762 F.2d 775, 781 (9th Cir. 1985).

All of the information that formed the basis for the initial probable cause determination to issue the warrant came from informants. No information is contained in the warrant affidavit concerning the reliability of the informants. No facts in the warrant affidavit indicate that any information given in the past by any one of the informants had proved to be reliable.

The warrant affidavit does show, however, that the information from the informants was either obtained years before the issuance of the warrant or related to events that occurred at unspecified times no later than three months prior to the issuance of the warrant. It is fundamental that a magistrate's conclusion "that probable cause does exist must be based upon facts reasonably related in time to the date of the issuance of the warrant." *Stovall v. Commonwealth*, 213 Va. 67, 70, 189 S.E.2d 353, 356 (1972). Clearly, the information from the informants is neither supported by a showing of reliability nor related in time to the date of the warrant. In making the determination whether the omissions bore upon the probable cause determination, the inherent weakness of this affidavit is an important factor.

The overwhelming bulk of allegations in the warrant affidavit is stale. Those that are not stale are contained in the paragraph concerning the interrogation of Rawlings. This same paragraph is the foundation for the majority's conclusion that the informers were reliable because their information corroborated Rawlings' information. That which is initially unreliable, however, cannot be made reliable through corroboration by additional unreliable information. Significantly, the warrant affidavit contains no information upon which the magistrate independently could conclude that the information attributable to Rawlings was credible or reliable. Rawlings was not shown to be a reliable informant. The information attributed to him related to past events and could have been obtained by any person. Neustadter made a preliminary

showing that the warrant affidavit failed to disclose that during a substantial portion of the time that the affiant was interrogating Rawlings, Rawlings denied that he had purchased cocaine from Neustadter. Rawlings' affidavit asserts that Rawlings only concurred in the investigator's version of the sales because Rawlings was threatened. Neustadter's allegations, thus, tended to establish that the police omitted crucial facts, namely, the threats made to Rawlings and his family. Proof of those threats would have discredited the information attributable to Rawlings. *Rogers v. Richmond*, 365 U.S. 534 (1961) (threatening defendant with his wife's incarceration and implying that if defendant cooperated wife would not be incarcerated resulted in an unreliable and involuntary statement); *Tipton v. Commonwealth*, 224 Va. 256, 262, 295 S.E.2d 880, 883 (1982) (threats to prosecute defendant's fiancee or family members rendered confession unreliable and involuntary).

Neustadter also established that the affiant failed to disclose to the magistrate the fact that Rawlings told the affiant that Rawlings still had in his possession the cocaine that he was alleged to have purchased from Neustadter. That fact is significant and might have caused the magistrate to inquire about the seizure of the cocaine. Such an inquiry would have required the affiant to disclose that the police never obtained such a vital piece of evidence from Rawlings and thus could not establish the reliability and credibility of the information attributable to Rawlings. Neustadter's preliminary showing goes to the very heart of the probable cause determination that supported the issuance of the warrant.

It is, in my judgment, untenable to assert that the informants gave information that was mutually corroborative and corroborative of the statements attributed to Rawlings. In addition to producing evidence that had the tendency to establish that the police suppressed information that may have caused the magistrate to conclude that Rawlings was not credible or reliable, Neustadter affirmatively established that the informants were not shown to be either credible or reliable. Because Neustadter's preliminary showing substantially calls into question the validity of the information attributable to the informants and the credibility of the informants, it cannot be said that the Rawlings' information has been "corroborated." An informant whose credibility is not estab-

lished gains no greater degree of credibility solely because his information concerning a past event is repeated by another informant whose credibility is not established.

This is not a case where there has been independent observation of reported facts by the police. *Compare Williams v. Commonwealth*, 4 Va. App. 53, 69, 354 S.E.2d 79, 88 (1987). Here, the police alleged that their interview of Rawlings was prompted by the information attributable to the informants. The informants only gave information concerning past activity or otherwise "easily obtained facts and conditions existing at the time of the tip." *Illinois v. Gates*, 462 U.S. at 245. Based on the tip concerning two to four year old information, the police then confronted Rawlings. Thus, the information attributable to Rawlings is neither independent of the informants nor the consequence of verified predictions.

The effect of Neustadter's preliminary showing is to establish that the omissions and misrepresentations in the warrant affidavit cast doubt not only on the credibility and reliability of the informers but also upon the credibility and the reliability of the information attributed to Rawlings. I disagree with the majority conclusion that Rawlings never repudiated his alleged confession to the police. Rawlings' affidavit does in fact repudiate the statement. Rawlings swore that he told the investigators that their information was incorrect and that he had not purchased cocaine from Neustadter. His affidavit is clear that he only agreed to their statements because of the threats against him and his family. In so doing, the sum of the information from the affiant, the Loudoun County police investigator, was rendered inadequate to support a finding of probable cause.

For these reasons I would hold that Neustadter has made a preliminary showing that the information alleged to be omitted from the affidavits was sufficiently material to cast doubt on the existence of probable cause. Accordingly, he was entitled to a full evidentiary hearing where he would have the opportunity to prove to the satisfaction of the trier of fact that suppression was warranted.