PUBLISHED

COURT OF APPEALS OF VIRGINIA

Present: Judges Frank, Kelsey and Alston
Argued by teleconference

JOSEPH ALFONSO PAPOL

OPINION BY
v.    Record No. 1765-12-1                    JUDGE D. ARTHUR KELSEY
MARCH 18, 2014

COMMONWEALTH OF VIRGINIA

FROM THE CIRCUIT COURT OF THE CITY OF WILLAMSBURG
AND COUNTY OF JAMES CITY
Michael E. McGinty, Judge

Patricia Palmer Nagel (The Law Offices of Patricia Palmer
Nagel, P.L.C., on briefs), for appellant.

Katherine Quinlan Adelfio, Assistant Attorney General
(Kenneth T. Cuccinelli, II, Attorney General, on brief), for
appellee.

The trial court convicted Joseph Alfonso Papol of one count of possession of child

pornography, punishable under Code § 18.2-374.1:1(A), and eleven counts of possession of child

pornography, second or subsequent violations, punishable under Code § 18.2-374.1:1(B). On

appeal, Papol argues the trial court should have dismissed the eleven second or subsequent

counts. We disagree and affirm.

I.

On appeal, we review the evidence in the "light most favorable" to the Commonwealth.

Commonwealth v. Hudson, 265 Va. 505, 514, 578 S.E.2d 781, 786 (2003). This principle

requires us to "discard the evidence of the accused in conflict with that of the Commonwealth,

and regard as true all the credible evidence favorable to the Commonwealth and all fair

inferences to be drawn therefrom." Parks v. Commonwealth, 221 Va. 492, 498, 270 S.E.2d 755,

759 (1980) (emphasis and internal quotation marks omitted).

The evidence at trial proved that, on October 22, 2010, Papol downloaded from the Internet to his computer twelve sexually explicit images of prepubescent girls. To obtain the twelve images, Papol used a peer-to-peer, file-sharing program that downloads "torrent files" from the Internet. App. at 258, 355-56. A digital forensic expert at trial explained that when someone downloads "torrent files," the program separately downloads different pieces of the files from different databases maintained by others who participate in the peer-to-peer, file-sharing program. Id. at 307, 355-56. The expert explained it this way: "The thing with torrents is you can download from . . . not just one computer, but if you've got 50 people with the same file on it, [the torrent program] can take bits and pieces from all 50 of those people and recreate it on your computer." Id. at 356.

Papol saved the twelve images on his computer using a folder titled, "LS Magazine." Id. at 350-51. The expert testified that "LS Magazine" refers to a notorious Ukrainian criminal enterprise that trafficked in pornographic images of prepubescent girls as young as ten. Id. at 352-53. Upon his arrest, Papol gave a full confession and admitted that the twelve images he downloaded involved girls appearing to be "maybe 12 and 13" years old. Id. at 258, 282. A grand jury indicted Papol on one count of possession of child pornography and eleven counts of possession of child pornography, second or subsequent violations.

At trial, Papol argued that "because he ha[d] never been previously convicted" of possessing child pornography, "there is no predicate offense" for the eleven charges alleging a "second or subsequent violation." App. at 16. "As a result," Papol reasoned, the eleven charges "must be dismissed." Id. The trial court rejected Papol's argument and found him guilty on all twelve counts.

II.

On appeal, Papol argues that the eleven "second or subsequent" charges under Code
§ 18.2-374.1:1(B) should have been dismissed because he had never been previously convicted
of possession of child pornography. Papol also contends that, in any event, he did not commit a
second or subsequent violation because he received the images during a single download. For
several reasons, we disagree.

A criminal defendant violates Code § 18.2-374.1:1(A) when he "knowingly possesses
child pornography." The crime involves the act of *possessing* child pornography — not the act
of acquiring it. As Papol concedes,[1] Code § 18.2-374.1:1(A) tailors the unit of prosecution
analysis to "the number of individual items of sexually explicit visual material" possessed by the
defendant. Chapman v. Commonwealth, 56 Va. App. 725, 732, 697 S.E.2d 20, 24 (2010)
(quoting Mason v. Commonwealth, 49 Va. App. 39, 48, 636 S.E.2d 480, 484 (2006)). The only
qualification is that each image possessed must individually fit within the definition of "child
pornography" as defined by Code § 18.2-374.1(A).

This analysis tracks the underlying purpose of the statute to protect children from
pornographers, pedophiles, and others who seek to take advantage of their vulnerabilities. See
Freeman v. Commonwealth, 223 Va. 301, 309, 288 S.E.2d 461, 465 (1982) (discussing Code
§ 18.2-374.1). "The prevention of sexual exploitation and abuse of children constitutes a
government objective of surpassing importance." New York v. Ferber, 458 U.S. 747, 757
(1982). The children in the images possessed by Papol were real children. The pornographers
who took the pictures did so because there was a market for it — a market "intrinsically related
to the underlying abuse" of the children being exploited. United States v. Stevens, 559 U.S. 460,

---

[1] See Oral Argument Audio at 7:59-8:04, 11:25-11:33, 14:53-15:00.

471 (2010) (internal quotation marks omitted). Because child pornography has this "proximate link to the crime from which it came," id. (quoting Ashcroft v. Free Speech Coalition, 535 U.S. 234, 250 (2002)), the possessors of child pornography should be held accountable for each violation, no less than the pornographers themselves.

Code § 18.2-374.1:1 reinforces these legislative policies by adding an enhanced penalty for recidivists. Under subsection B, "Any person who commits a second or subsequent violation of subsection A is guilty of a Class 5 felony." Papol contends that, even if he committed twelve separately prosecuted acts of possessing child pornography, he cannot be charged with eleven counts of "second or subsequent" violations unless they physically occurred after he had already been convicted of the first count.

Whether a recidivism statute requires evidence of prior violations or prior convictions is a straight-forward question of statutory interpretation. Virginia courts look solely to the text of the statute for the answer. See Commonwealth v. Leone, 286 Va. 147, 150, 747 S.E.2d 809, 811 (2013). For example, in Thomas v. Commonwealth, 256 Va. 38, 501 S.E.2d 391 (1998), a defendant was convicted under the recidivism statute governing habitual offenders of motor vehicle laws. The defendant claimed the "second or subsequent" provision required a prior conviction. The statute, Thomas held, required only a "second or subsequent such offense" and the legislature's choice of the word "offense" in the recidivism provision "rather than the word 'conviction,' clearly demonstrates an intent to authorize punishment enhancement without a prior conviction." Id. at 41-42, 501 S.E.2d at 393. This subtle, but important, distinction has been recognized by Virginia courts in many recidivism contexts.[2]

_____

[2] See, e.g., Williams v. Commonwealth, 265 Va. 268, 270-72, 576 S.E.2d 468, 469-70 (2003) (rejecting argument that, under the DUI statute, the "elevation of an offense to a felony and the resulting enhancement of punishment can occur only if a defendant has been convicted of two previous offenses under Code § 18.2-266 at the time the third offense is committed"); Ansell v. Commonwealth, 219 Va. 759, 763, 250 S.E.2d 760, 763 (1979) (rejecting contention

Unlike other Virginia statutes,[3] Code § 18.2-374.1:1(B) does not use the word "conviction" as a predicate for the enhanced felony charge. Subsection B speaks only of a "second or subsequent violation" of the child-pornography statute, which even more clearly denotes the underlying violative act. The plain terms of the statute thus demonstrate Papol's flawed reading of it. He committed the first violation when he possessed the first offending image. Each of the other images he possessed was a subsequent violation of the statute. Having possessed twelve different images of child pornography, Papol was properly charged with, and convicted of, one violation under subsection A of Code § 18.2-374.1:1 and eleven second or subsequent violations under subsection B.

Even if a separate conviction for the first violation is not necessary, Papol continues, he never actually committed a second or subsequent violation because he received the images during a single download. See Appellant's Reply Br. at 4 ("[W]hether the images were possessed as a result of a single download or multiple downloads is critical to this analysis."). Under Papol's reasoning, he could only be convicted of a single count of possession under subsection A.[4]

If Papol's interpretation were correct, however, it would render Code § 18.2-374.1:1's unit-of-prosecution analysis easily subject to manipulation. Under Papol's approach, the statute

---

that a defendant could not be subject to the enhanced penalty provisions of Code § 18.2-53.1 (Use or display of firearm in committing felony) where he was convicted of more than one such offense in a single proceeding); Able v. Commonwealth, 16 Va. App. 542, 549, 431 S.E.2d 337, 341 (1993) (holding that "an enhanced punishment may be applied where there are successive convictions of separate offenses in a single proceeding").

[3] See, e.g., Code §§ 18.2-57.2(B) (assault and battery), 18.2-67.5:2(A) (felony sexual assault), 18.2-104 (misdemeanor larceny).

[4] At oral argument on appeal, Papol's counsel acknowledged that her reasoning would not lead to the result Papol seeks: a dismissal of the eleven counts of second or subsequent possession under subsection B, leaving him with a single count of possession under subsection A. Instead, it would mean he could be convicted of twelve counts of possession under subsection A. Oral Argument Audio at 15:01-15:15.

would allow his current set of convictions (one initial violation and eleven second or subsequent violations) if he had separately clicked "download" for each of the twelve images, even though it would take mere seconds to do so. But Papol's interpretation of the statute would not allow his convictions if he clicked "download" only once and initiated a torrent program that, as the Commonwealth's expert explained, retrieved each of the twelve images from decentralized sources and downloaded the data packets into an aggregate file — thereby presenting to peer-to-peer network users like Papol the efficiency of a one-click download. We think it highly improbable that the legislature intended the recidivism provision of Code § 18.2-374.1:1(B) to be so easily evaded by the very individuals it was meant to deter and, failing that, to punish.

After all, Papol was convicted of possessing — not downloading — child pornography. We do not believe the legislature intended the recidivism provision in Code § 18.2-374.1:1(B) to be evaded by aggregate downloading using a torrent program or to be determined by the precise micro-timing of the receipt of each image. It should not matter that the images were downloaded from the Internet during a single download episode any more than it should matter if they all arrived by mail in a single envelope. When multiple images are downloaded on a single occasion, one of those images invariably constitutes the first image possessed, while all the others qualify as second or subsequent images possessed.

III.

The trial court did not err in finding Papol guilty of one count of possession of child pornography, punishable under Code § 18.2-374.1:1(A), and eleven counts of possession of child pornography, second or subsequent violations, punishable under Code § 18.2-374.1:1(B). Rejecting Papol's arguments to the contrary, we affirm each of these convictions.

Affirmed.