# COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present:   Judges Beales, Ortiz and Causey
Argued at Lexington, Virginia


JOSHUA ADAM ECKARD

v.      Record No. 0218-22-3

COMMONWEALTH OF VIRGINIA

MEMORANDUM OPINION[*] BY
JUDGE RANDOLPH A. BEALES
MARCH 14, 2023

FROM THE CIRCUIT COURT OF AUGUSTA COUNTY
W. Chapman Goodwin, Judge

Aaron L. Cook (Cook Attorneys, on brief), for appellant.

Matthew P. Dullaghan, Senior Assistant Attorney General (Jason S.
Miyares, Attorney General, on brief), for appellee.


Following a jury trial, Joshua Adam Eckard was convicted of one count of possession of

child pornography and eleven counts of possession of child pornography, second or subsequent

offense.  On appeal, Eckard assigns error 1) to the trial court's refusal to grant him a hearing under

*Franks v. Delaware*, 438 U.S. 154 (1978), 2) to the trial court's instruction to the jury that an

element of possession of child pornography, second or subsequent offense is "that this possession

occurred subsequent or in addition to at least one other possession," 3) to the trial court's refusal to

"include the date of offense alleged in the indictments in the finding instructions given to the jury,"

and 4) to the trial court's denial of his motion to set aside the verdict alleging juror misconduct

without first holding a hearing.

---

[*] This opinion is not designated for publication.  *See* Code § 17.1-413.

## I. BACKGROUND[1]

On appeal, we view the facts "in the 'light most favorable' to the Commonwealth, [as] the prevailing party in the trial court." *Commonwealth v. Cady*, 300 Va. 325, 329 (2021) (quoting *Commonwealth v. Hudson*, 265 Va. 505, 514 (2003)). Doing so requires us to "discard the evidence of the accused in conflict with that of the Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences to be drawn therefrom." *Cady*, 300 Va. at 329 (quoting *Commonwealth v. Perkins*, 295 Va. 323, 324 (2018)).

In March 2019, Joshua Eckard and Erin Dempsey were in a romantic relationship and had been living together for "a little under a year." During that month, Dempsey investigated Eckard's phone because she suspected that Eckard was being romantically unfaithful. On Eckard's phone, Dempsey discovered an image of a Disney character having sex with a toddler. This discovery prompted Dempsey to search Eckard's laptop computer on March 19, 2019. On the laptop, Dempsey found pictures of adult men dressed in bear costumes next to partially undressed young children. Later that day, Dempsey confronted Eckard about the pictures. While Eckard was present, Dempsey then had a "computer nerd" named Joshua Gray come over and examine the laptop and an external hard drive. After Gray discovered multiple pictures of children in lewd and sexual positions, Dempsey screamed at Eckard to "get out, get out, get out, get out!" The next morning, Dempsey turned Eckard's electronic devices over to the police.

Investigator R. Martin of the Augusta County Sheriff's Office interviewed Dempsey and Gray the same day that Dempsey turned in Eckard's devices. Based on Dempsey's and Gray's

---

[1] Portions of the record in the case now before this Court were sealed. Nevertheless, the appeal necessitates unsealing relevant portions of the record to resolve the issues Eckard has raised. Evidence and factual findings below that are necessary to address the assignment of error are included in this opinion. Consequently, "[t]o the extent that this opinion mentions facts found in the sealed record, we unseal only those specific facts, finding them relevant to the decision in this case. The remainder of the previously sealed record remains sealed." *Levick v. MacDougall*, 294 Va. 283, 288 n.1 (2017).

statements, Investigator Martin submitted an affidavit in support of probable cause for a search

warrant.  The affidavit stated:

> On 3/20/19 Erin Dempsey came into the Augusta County Sheriff's office to report that Child Pornography had been found on her boyfriend, Josh Eckard's computer.  She was accompanied by a mutual friend by the name of Joshua Gray.  Dempsey advised that in the past she had caught her boyfriend Eckard looking at animated child pornography, and she had some suspicion that he may be looking at real child pornography due to a meme that she had located on his phone that was borderline child pornography.  She reported that on 3/19/19 she requested that Gray come to her residence and assist her with confronting Eckard about the issue.  During that encounter Eckard gave permission for Gray to look at his computer. While looking through the computer and then connecting an external hard drive Gray located an image of what he described as a toddler that was nude and positioned in a lewd sexual manor.  On 3/20/10 [sic] Dempsey brought the before mentioned computer bag that she advised has that computer, external hard drive, several cell phones, and several USB drives to the Augusta County Sheriff's Office.

After the magistrate issued a search warrant for Eckard's electronic devices, computer forensic

examiner Kristy Tredway conducted the search.[2]  Tredway discovered multiple internet searches on

Eckard's laptop for teenage pornography, as well as twelve images in a "hidden folder" on an

external hard drive.  The "hidden folder" was labeled "XXX."  The twelve images were collectively

admitted as Commonwealth's Exhibit 6, and Tredway testified that the images had been accessed

on the laptop between 2013 and 2016 and had not been deleted from the external hard drive.  Each

of the twelve images was a pornographic picture of a minor.

Eckard admitted to investigators that he owned the devices that Dempsey gave to police.

Eckard told the police that he had been viewing child pornography because he "had an issue with

---

[2] Before trial, Eckard filed a motion for a *Franks* hearing—and to ultimately suppress the "evidence obtained from the search of [Eckard's] electronic devices"—alleging that Investigator Martin had falsely included the word "nude" in his affidavit.

normal pornography that had led into the child pornography." Eckard also specifically identified to the police the external hard drive onto which he had downloaded child pornography.

At trial, after the Commonwealth entered into evidence the twelve images found on Eckard's external hard drive (which he had earlier tried to suppress), Eckard testified in his own defense. He admitted under oath that he owned the laptop and the external hard drive and that he had created the "XXX" folder. Eckard also testified that he had downloaded pornography for a couple of years because he was taking ADD medications that prompted him to collect things, including pornography. Eckard acknowledged that he downloaded the images that were within the "XXX" folder, but he maintained that he had downloaded most of them in "a mass folder" all at once without looking at the images and had later attempted to delete them. Eckard agreed, however, that he knew he had actually downloaded child pornography in the past.

At the conclusion of the evidence, the jury convicted Eckard of one count of possession of child pornography, and eleven counts of possession of child pornography, second or subsequent offense. On November 29, 2021, Eckard filed a motion to set aside the jury verdict because a juror reported feeling threatened by another juror while in a bathroom in the courthouse. The trial court denied the motion to set aside the jury verdict. Eckard now appeals.

## II. ANALYSIS

### A. *Franks* Hearing

On appeal, Eckard argues that "[t]he trial court erred when it ruled that the Appellant had not proffered sufficient evidence to entitle him to a *Franks* hearing in support of his *Motion to Suppress* certain electronic evidence searched by a law enforcement officer."

In *Franks v. Delaware*, the Supreme Court of the United States held that to justify a hearing to attack the facial validity of a warrant, the defendant must make "a substantial

preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit." 438 U.S. at 155-56.

However, "'if, when material that is the subject of the alleged falsity or reckless disregard is set to one side, there remains sufficient content in the warrant affidavit to support a finding of probable cause, no hearing [pursuant to *Franks*] is required.'" *Barnes v. Commonwealth*, 279 Va. 22, 31 (2010) (quoting *Franks*, 438 U.S. at 171-72); *see Neustadter v. Commonwealth*, 12 Va. App. 273, 278, *aff'd on reh'g en banc*, 13 Va. App. 283 (1991).

Here, the only material that Eckard alleges to be false is the affidavit's use of the word "nude" to describe the pictures of toddlers that Gray saw when he examined Eckard's external hard drive. Eckard argues that the word "nude" is false because Gray's written statement to the police did not include that word, and because Gray, during testimony at a preliminary hearing, described the toddlers as "clothed."

In the case now before this Court, sufficient content in the affidavit remains to support the finding of probable cause even after removing the allegedly false part of the statement, the words "nude and." *See Barnes*, 279 Va. at 34-35. The surrounding sentence of the affidavit then provides that Eckard's external hard drive contained an image of "a toddler that was positioned in a lewd sexual manor [sic]." In addition, Gray's statement was not an isolated complaint. Rather, it corroborated Dempsey's report that "Child Pornography had been found on her boyfriend, Josh Eckard's computer." Eckard does not challenge Dempsey's statement, which elaborates that Dempsey "caught her boyfriend Eckard looking at animated child pornography" and that she found an image on his phone "that was borderline child pornography." Even without the word that was allegedly incorrect, "nude," the affidavit was still sufficient to show that there was probable cause here since, "given all the circumstances set forth in the affidavit," *Illinois v. Gates*, 462 U.S. 213, 238 (1983), it was "reasonable to believe" that child pornography

- 5 -

would be found on Eckard's devices.  *See Adams v. Commonwealth*, 48 Va. App. 737, 750 (2006) (quoting *United States v. Lalor*, 996 F.2d 1578, 1582 (4th Cir. 1993)); Code § 18.2-374.1(A) (defining child pornography as "sexually explicit visual material which utilizes or has as a subject an identifiable minor").

In short, the word "nude" was simply not necessary to the finding of probable cause, and therefore no *Franks* hearing was required.  *See Barnes*, 279 Va. at 31 (quoting *Franks*, 438 U.S. at 171-72); *see Neustadter*, 12 Va. App. at 278.

### B.  Jury Instructions

"A reviewing court's responsibility in reviewing jury instructions is 'to see that the law has been clearly stated and that the instructions cover all issues which the evidence fairly raises.'"  *Darnell v. Commonwealth*, 6 Va. App. 485, 488 (1988) (quoting *Swisher v. Swisher*, 223 Va. 499, 503 (1982)).  "The trial court has 'broad discretion in giving or denying instructions requested,' and we review those decisions under an abuse of discretion standard." *Barney v. Commonwealth*, 69 Va. App. 604, 609 (2019) (quoting *Gaines v. Commonwealth*, 39 Va. App. 562, 568 (2003) (*en banc*)).  "[W]hether a jury instruction accurately states the relevant law is a question of law that we review de novo."  *Watson v. Commonwealth*, 298 Va. 197, 207 (2019) (quoting *Payne v. Commonwealth*, 292 Va. 855, 869 (2016)).

### 1.  Possession of Child Pornography, Second or Subsequent Offense

Eckard argues that the trial court erred by giving Jury Instruction 11.  Specifically, he assigns error to the portion that "instructed the jury that an element of the offense of possession of child pornography (second offense) is 'that this possession occurred subsequent or in addition to at least one other possession' rather than 'that this was a second or subsequent offense' as required by the language of the statute."  Eckard also challenges the portion of the instruction which stated, "The second or subsequent possession need not occur on a separate date or time, but must involve a

separate child pornography file."  Without citing any supporting case authority, Eckard contends that providing that jury instruction was error by the trial court because the instruction deviated from the language in Code § 18.2-374.1:1(B).  Instead, Eckard contends that the jury simply should have been instructed that the Commonwealth must prove beyond a reasonable doubt "that this was a second or subsequent offense."  Contrary to Eckard's claims, Jury Instruction 11 accurately stated the law as applicable to the facts of this case.

In full, Jury Instruction 11 reads:

> The defendant is charged with the crime of possession of child pornography second or subsequent offense (CR20000376-01 through CR20000376-11).  The Commonwealth must prove beyond a reasonable doubt:
>
> (1)  That the defendant knowingly possessed child pornography; and
>
> (2)  *That this possession occurred subsequent or in addition to at least one other possession.*
>
> *The second or subsequent possession need not occur on a separate date or time, but must involve a separate child pornography file.*
>
> If you find from the evidence that the Commonwealth has proven beyond a reasonable doubt the offense as charged, then you shall find the defendant guilty of possession of child pornography, second or subsequent offense.
>
> If you find that the Commonwealth has proven beyond a reasonable doubt that the defendant knowingly possessed child pornography, but not that this possession occurred subsequent or in addition to at least one other possession, then you shall find the defendant guilty of a first offense of possession of child pornography.
>
> If you find that the Commonwealth has failed to prove beyond a reasonable doubt that the defendant possessed child pornography, then you shall find the defendant not guilty.

(Emphases added). Twelve separate pornographic pictures of minors were found on Eckard's external hard drive, and he was charged with one count of possession of child pornography and eleven counts of possession of child pornography, second or subsequent offense. Eckard was charged under Code § 18.2-374.1:1 which states in subsection (A): "Any person who knowingly possesses child pornography is guilty of a Class 6 felony." Subsection (B) provides, "Any person who commits a second or subsequent violation of subsection A is guilty of a Class 5 felony." Binding precedent from this Court states that, for the purposes of subsection (B), it does "not matter that the images were downloaded from the Internet during a single download episode any more than it should matter if they all arrived by mail in a single envelope." *Papol v. Commonwealth*, 63 Va. App. 150, 156 (2014). Consequently, "[w]hen multiple images are downloaded on a single occasion, one of those images invariably constitutes the first image possessed, while all the others qualify as second or subsequent images possessed." *Id.*

Eckard conceded at trial that the same language he opposes in Jury Instruction 11 is based on language from this Court. Indeed, the language Eckard challenges closely resembles our reasoning in *Papol,* which is binding authority that we must follow. *See id.*; *Armstrong v. Commonwealth*, 263 Va. 573, 581 (2002). Furthermore, the trial court has a duty to define each element of the offense rather than simply leaving the jury to wrestle with the meaning of a difficult phrase. *See Lawlor v. Commonwealth*, 285 Va. 187, 229 (2013). By clarifying the phrase "second or subsequent violation" in Code § 18.2-374.1:1(B) as the possession of child pornography "subsequent or in addition to at least one other possession," the trial court was properly acting to fulfill this duty.

Therefore, given that Jury Instruction 11 accurately follows our holding in *Papol* and given that it harmonizes with the language of Code § 18.2-374.1:1, we conclude that Jury Instruction 11 accurately defined the elements of possession of child pornography—and possession of child

pornography, second or subsequent offense. *See Papol*, 63 Va. App. at 156. In addition, the jury instruction was appropriate here where twelve separate images of child pornography were found on Eckard's external hard drive. Consequently, we cannot say it was an abuse of discretion to give that jury instruction. *See Barney*, 69 Va. App. at 609; *Watson*, 298 Va. at 207.

### 2. Dates of Offenses

Eckard argues that the trial court erred by refusing to include the dates of the charged offenses in the jury's "finding instructions."[3] The indictments against Eckard alleged that the offense occurred "on or about the 12th day of March, 2019, to the 19th day of March, 2019." Eckard argues that on those dates he had already ceased accessing the pornographic images "for nine months or more" and "had attempted to delete the contraband images." In support of his argument that the jury should have been instructed about the alleged dates of the offenses, Eckard cites to only two statutes—neither of which governs jury instructions, but rather the validity of *indictments*. Code §§ 19.2-220, 19.2-226. Eckard's argument is consequently without support and is simply not compelling.

We will uphold a "verdict . . . if the evidence is sufficient to prove beyond a reasonable doubt that a crime occurred and that the defendant committed the crime, even though the evidence is such that there may be a reasonable doubt as to the day on which the offense occurred." *Marlowe v. Commonwealth*, 2 Va. App. 619, 623-24 (1986). Indeed, "[i]n a felony case the Commonwealth may prove the commission of a crime charged on a date different from that alleged in the indictment" unless time is an element of the offense. *Farhoumand v. Commonwealth*, 288 Va. 338, 351 (2014) (alteration in original) (quoting *Harris v.*

---

[3] Eckard's assignment of error challenges "the finding instructions" but specifically identifies only Jury Instruction 11, and no other jury instruction provided by the trial court is relevant to this assignment of error. Consequently, we assume that "the finding instructions" to which Eckard refers are encompassed by Jury Instruction 11, which is the instruction on possession of child pornography and possession of child pornography, second or subsequent offense.

*Commonwealth*, 185 Va. 26, 34 (1946)). "[T]ime is not a material element of a criminal offense unless made so by the statute creating the offense." *Id.* (quotation omitted).

Under the plain language of Code § 18.2-374.1:1, time is not a material element of the crime of possession of child pornography for either a first offense, a subsequent offense, or both. The portion of subsection (B) that states that a "second or subsequent violation" is a "Class 5 felony" is certainly not sufficient to render time an element, s*ee Papol*, 63 Va. App. at 156, and the remaining text of both subsections contains no language concerning time at all. Furthermore, Eckard cites no authority which finds that either subsection contains a time element, and this Court cannot "add language to the statute the General Assembly has not seen fit to include." *See Holsapple v. Commonwealth*, 266 Va. 593, 599 (2003).

At trial, the trial court properly instructed the jury that a violation of Code § 18.2-374.1:1 required proof beyond a reasonable doubt that Eckard "knowingly possessed child pornography"— and that each subsequent violation required proof that Eckard possessed a separate child pornography image. *See Papol*, 63 Va. App. at 156. Consequently, given that time is not a material element of an offense under either Code § 18.2-374.1:1(A) or (B), and given that Jury Instruction 11 properly covered the actual elements of the offenses, the trial court did not err by refusing to include the dates of the charged offenses in Jury Instruction 11.

### C.  Denial of the Motion to Set Aside the Jury Verdict

On appeal, Eckard also argues that "[t]he trial court erred when it summarily denied without a hearing the *Motion to Set Aside the Jury Verdict* based on an allegation of juror misconduct." In his motion, Eckard argued that the jury verdict should be set aside because "[a] juror [had] changed his vote to guilty due to a perceived threat."

On appeal, Eckard asserts that he provided a detailed proffer to the trial court of the evidence he would have presented at a hearing. However, the record before us on appeal does not

support his assertion. Despite apparently quoting a bit of its language in his brief, Eckard's proffer is simply not in the record before this Court—either at the page to which Eckard cites or anywhere else.[4] Nevertheless, Eckard's motion did include two attachments. The first attachment was an internal sheriff's office email which stated:

> [The juror] called this morning to report that he was very disturbed by a court process that he was involved in 9/30/21. He said that he felt threatened, and was threatened in the bathroom, and felt like he had to vote the way of the majority. He talked endlessly about the trial process and was upset that a 2-day trial had been turned into a one day trial where the jury was forced to stay late in the evening. He complained that the judge only gave them one break the entire day. He wants to talk to Sheriff Smith.

The motion also included a second attachment, a follow-up letter from the Sheriff to the juror stating that the Sheriff had attempted several times to reach the juror to discuss his concerns. The Sheriff included his phone number and asked the juror to call to arrange a meeting. The letter was dated October 20, 2021, and a handwritten statement on the letter indicated that it was "hand delivered" on "10/20/21." Despite the Sheriff's attempts to reach this juror, there is no evidence in the record that the juror ever responded to the Sheriff's efforts to contact him or ever spoke with the Sheriff regarding the alleged threat.

In its order denying the motion to set aside the jury's verdict, the trial court held that "[a] finding of prejudicial juror misconduct is generally limited 'to activities of jurors that occur outside the jury room' and any alleged misconduct occurring within the jury room that does not fall under four enumerated exceptions forecloses the need for further investigation." It held that "[t]he allegation in this case does not fall within any of these exceptions." Consequently, the trial court denied Eckard's motion without a hearing.

---

[4] When the parties appeared for the sentencing hearing on January 14, 2022, the trial court granted Eckard permission for "an opportunity to submit a written proffer on an issue with regard to a motion previously filed[,]" but the record on appeal does not contain any such written proffer.

The Supreme Court has stated that "a motion to set aside a verdict for juror misconduct is addressed to the sound discretion of the trial court and, unless there has been an abuse of that discretion, the judgment below will not be reversed on appeal." *Caterpillar Tractor Co. v. Hulvey*, 233 Va. 77, 82 (1987). Furthermore, "[a] reviewing court can conclude that 'an abuse of discretion has occurred' only in cases in which 'reasonable jurists could not differ' about the correct result." *Bethea v. Commonwealth*, 68 Va. App. 487, 506-07 (2018) (quoting *Commonwealth v. Swann*, 290 Va. 194, 197 (2015)), *aff'd on other grounds*, 297 Va. 730 (2019).

"When possible juror misconduct is the issue on appeal, the appellant carries the burden of establishing '*a probability of prejudice* to the accused.'" *Id.* at 507 (quoting *Jackson v. Commonwealth*, 267 Va. 178, 199 (2004)). In addition, "neither the sole fact of irregularity nor the mere suspicion of injustice based upon the irregularity is sufficient to warrant setting aside a verdict." *Caterpillar*, 233 Va. at 82. "We have . . . generally limited findings of prejudicial juror misconduct to activities of jurors that occur outside the jury room," *Jackson*, 267 Va. at 199 (quotation omitted), and events "that interjected information about the case that was not admitted into evidence," *Riner v. Commonwealth*, 268 Va. 296, 318 (2004).

The juror's allegations in the case now before this Court deal neither with the activities of jurors outside the courthouse nor the injection of external information. According to the record before us, the trial court was only presented with a juror's vague allegation that he felt threatened while inside the courthouse and evidence from the sheriff's office indicating that the juror called after going home that night and reported the alleged incident in a courthouse bathroom—along with extensive complaints about trial scheduling and about the jury not receiving enough breaks during trial. Eckard's claim lacks detail, and his own motion to set aside the verdict described the event as a "perceived threat" rather than an actual threat. Vague allegations that a juror was, or felt, threatened by another juror inside the courthouse do not nullify a jury verdict because

they are not external influences or threats. In short, all we have in the record before us is a second-hand account of a vague threat allegedly made in a courthouse bathroom. The complaining juror did not name the other juror who supposedly threatened him—and never followed up with the Sheriff after leaving him a message despite the Sheriff's numerous attempts to contact the complaining juror to gain more details.

Eckard's motion, therefore, alleges conduct that at best only amounts to internal discord between two jurors, and "there is no requirement that a jury arrive at a verdict without discord." *Bethea*, 68 Va. App. at 507 n.12 (citing authorities from other jurisdictions affirming the trial court's refusal to grant a mistrial based on conflicts between jurors, including conflicts rising to the level of threats). The facts alleged in Eckard's motion to set aside the jury's verdict did not suggest that the juror's verdict had been affected by any influence other than pressure from another juror.[5] *See id.* at 506-09 (affirming the trial court's refusal to declare a mistrial even though the juror reported that she had been bullied during deliberations).

In addition, after the jury rendered its guilty verdict, the trial court polled the jury twice— once for the first offense and once for the eleven second or subsequent offenses. All of the jurors, including the complaining juror, verbally confirmed their votes for a guilty verdict during both polls of the jury. *Bethea*, 68 Va. App. at 506 (recognizing that polling the jury "ensure[s]

---

[5] Furthermore, the trial court could not consider much of Eckard's claim because "a juror is precluded from testifying as to any matter or statement occurring during the course of the jury's deliberations." *Bethea*, 68 Va. App. at 505 (citing *Jenkins v. Commonwealth*, 244 Va. 445, 460 (1992)). "Virginia has been more careful than most states to protect the inviolability and secrecy of jurors' deliberations" and has "adhered strictly to the general rule that the testimony of jurors should not be received to impeach their verdict, especially on the ground of their own misconduct." *Caterpillar*, 233 Va. at 82 (citing *Phillips v. Campbell*, 200 Va. 136, 140-41 (1958)). In addition, Virginia Rule of Evidence 2:606(b)(i) states that, during an inquiry into the validity of a verdict, "[t]he court may not receive a juror's affidavit or evidence of a juror's statement" on "any statement made or incident that occurred during the jury's deliberations." In the record before this Court, the juror's allegations in this case are so vague that none of the exceptions to Rule 2:606(b) apply.

that a jury verdict represents the understanding and agreement of all of the jurors"). Indeed, even where juror misconduct is alleged by one of the parties, "the unanimous verdict is the best evidence of each juror's opinion of the case." *Caterpillar*, 233 Va. at 82.

Given that the jury verdict was clearly shown to be unanimous after being polled twice, given that the complaining juror never responded to the Sheriff's efforts to follow up with him on those vague allegations, and given that the record before us on appeal contains no real proffer of any details of what the juror claimed happened at the courthouse, reasonable jurists could certainly at least differ about whether to deny Eckard's motion to set aside the jury's verdict. Therefore, we cannot say that it was an abuse of direction for the trial court to deny Eckard's motion here, and we consequently do not disturb the trial court's decision to deny the motion to set aside the jury's verdict.

## III. CONCLUSION

In short, Eckard was not entitled to a *Franks* hearing because, even without the word "nude," the statements of Erin Dempsey and Joshua Gray demonstrated that probable cause existed to support the search warrant, and the affidavit correctly stated that the toddler that Gray saw in the image was positioned in a lewd sexual manner. The challenged jury instruction was correctly provided, given that it was an accurate statement of the law as described by this Court in *Papol*, 63 Va. App. at 156, and given that it was applicable to the facts in the case now before us. In addition, none of the jury instructions were required to contain the alleged date of the offense as listed in the indictments because "in a felony case the Commonwealth may prove the commission of a crime charged on a date different from that alleged in the indictment" and because time is not an element of the offenses for which Eckard was convicted. *Farhoumand*, 288 Va. at 351. Finally, it was not an abuse of discretion to deny Eckard's motion to set aside the jury's verdict, given that the record before us on appeal shows that Eckard could present only

- 14 -

minimal facts about a vague supposed threat from a juror to another juror while in a bathroom at the courthouse.  For all of these reasons, we do not disturb the judgment of the trial court.

*Affirmed.*

Ortiz, J., concurring.

I join in the majority's decision, finding that the trial court did not abuse its discretion in refusing to grant a *Franks v. Delaware*, 438 U.S. 154 (1978), hearing, in providing the above-mentioned jury instructions, and in denying the motion to set aside the verdict for juror misconduct, based on the vague nature of the threats in this case. I write separately to note that courts should be able to inquire into physical threats made inside the jury room.

Virginia law generally confines our inquiry into prejudicial juror misconduct to activities "that occur outside the jury room," *Jenkins v. Commonwealth*, 244 Va. 445, 460 (1992), but courts may inquire into prejudicial juror misconduct *inside* the jury room when it concerns: (1) extraneous prejudicial information, (2) improper outside influence, (3) a mistake made on the verdict form, or (4) a juror's statement exhibiting overt racial/national origin bias, Va. R. Evid. 2:606(b)(ii). Rule 2:606—the "no impeachment" rule—is based on a long history of United States Supreme Court cases concerning secrecy in jury deliberations and is nearly identical to the codified Federal Rule 606. *See, e.g.*, Fed. R. Evid. 606(b)(2); *Pena-Rodriguez v. Colorado*, 580 U.S. 206 (2017); *Tanner v. United States*, 483 U.S. 107 (1987); *Mattox v. United States*, 146 U.S. 140 (1892); *United States v. Reid*, 53 U.S. 361 (1851), *overruled by Rosen v. United States*, 245 U.S. 467 (1918). There is limited caselaw concerning how a court should handle physical threats within the jury deliberation room. In deciding whether we may inquire into prejudicial physical threats against jurors—by jurors, made inside the jury room—we must balance the historical need for secrecy in jury deliberations with a criminal defendant's right to an "uncoerced verdict." *Lowenfield v. Phelps*, 484 U.S. 231, 241 (1988).

The United States Supreme Court has cautioned against rigid rules that prohibit all inquiry into internal jury deliberations, stating: "it would not be safe to lay down any inflexible [no impeachment] rule," as some cases may require jury testimony to avoid "violating the

plainest principles of justice." *McDonald v. Pless*, 238 U.S. 264, 268-69 (1915). It has repeatedly noted that "[t]his might occur in the gravest and most important cases." *Id.* at 269; *Tanner*, 483 U.S. at 119. Other jurisdictions have held the same. In reviewing a jury verdict based on alleged physical threats, the Second Circuit stated that "questions of jury coercion 'strike[] at the root of the right to a trial by jury . . . . If a verdict of guilty is returned for any other reason, it is a perversion of the constitutional guaranty to a jury trial.'" *Anderson v. Miller*, 346 F.3d 315, 326 (2d Cir. 2003) (first alteration in original) (quoting *United States v. Pleva*, 66 F.2d 529, 532 (2d Cir. 1933)). Although the Second Circuit ultimately found that the "issue need not be addressed," it nevertheless held that it would be "far from unreasonable to conclude that credible allegations of threats of violence leveled by one juror by another would fall within th[e] exception" to the no impeachment rule. *Id.* at 327.

I agree that the trial court did not abuse its discretion in denying Eckard's motion to set aside the jury verdict. This case does not "violat[e] the plainest principles of justice." The record does not contain Eckard's alleged proffer, the juror's complaint was vague and contained no reports of an actual threat, the juror failed to respond to repeated efforts to contact him, and the jury verdict was confirmed after polling twice. However, I maintain that credible allegations of physical violence or threats between jurors within the confines of the deliberation room should fall within the exception to the no impeachment rule in future cases. For these reasons, I concur.