COURT OF APPEALS OF VIRGINIA

PUBLISHED

Present:   Judges Petty, Beales and Decker
Argued at Alexandria, Virginia


JAMES BETHEA, S/K/A
  JAMES WILLIE BETHEA
                                                                    OPINION BY
v.        Record No. 2014-16-4                            JUDGE MARLA GRAFF DECKER
                                                                   FEBRUARY 20, 2018
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF PRINCE WILLIAM COUNTY
Steven S. Smith, Judge

Peter Francescon (J. Andrew Taylor; Boyce, Leahy & Francescon,
Lawyers, on brief), for appellant.

Katherine Quinlan Adelfio, Assistant Attorney General (Mark R.
Herring, Attorney General, on brief), for appellee.


James Willie Bethea appeals his conviction for first-degree murder.  He challenges his

conviction based on a peremptory strike of a venire member and on alleged juror misconduct.

For the reasons that follow, we affirm the conviction.

I.  BACKGROUND

In September 2015, the appellant was tried by a jury for first-degree murder.  The trial

resulted in a mistrial because the jury could not reach a verdict.  In April 2016, the appellant was

retried by a different jury.  The Commonwealth presented evidence that Charles Adkins (the

victim) was killed in his home.  In addition, the Commonwealth introduced evidence that the

appellant's DNA was found underneath the victim's fingernails and that some of the victim's blood was found in the appellant's vehicle.[1]

After two days of deliberations, the jury found the appellant guilty of first-degree murder. The trial court sentenced him to life in prison in accordance with the jury's recommendation.

## II. ANALYSIS

The appellant argues that the trial court erred by denying his motion to set aside the verdict and declare a mistrial because the Commonwealth's peremptory strike of a venire member was impermissibly racially motivated. He also suggests that the court erred by refusing to declare a mistrial due to alleged juror misconduct.

### A. Peremptory Strike of Venire Member

The appellant contends that the Commonwealth's proffered race-neutral reasons for peremptorily striking an individual from the jury panel were pretextual. The Commonwealth responds that the record supports the trial court's credibility finding and that the reasons for the strike were race-neutral.

During *voir dire*, the prosecutor asked the members of the venire if they would "decide this case based on what we present to you" and "focus on the evidence that we give to you." The panel responded "yes" to both questions. The prosecutor also asked if the panel members were "comfortable considering circumstantial evidence," and they responded affirmatively. When she asked whether "anyone . . . [thought] that, if we can't tell you the motive, that means there's reasonable doubt," they responded no. The prosecutor then instructed the prospective jurors to raise their hands if they had "a problem" applying legal rules limiting the amount of evidence

---

[1] The deoxyribonucleic acid (DNA) profile of the material from the victim's fingernails matched the appellant's DNA profile or that of "any of his patrilineally related male relatives." Also, the blood recovered from the appellant's car floor mat had a DNA profile matching that of the victim.

that the Commonwealth was required to present. The transcript reflects that the panel had "[n]o response."

The Commonwealth peremptorily struck an African-American member of the venire.[2] The appellant challenged the Commonwealth's strike, suggesting that it was based on race and violated Batson v. Kentucky, 476 U.S. 79 (1986) (recognizing that excluding a potential juror solely based on race is unconstitutional). The appellant was African-American, and the victim was not. The appellant's counsel told the court that he was "aware of a conversation between" the prosecutor and defense counsel from the first trial. He reported that the former defense counsel "was told" by the prosecutor that at the appellant's first murder trial, "the jury was nine-to-three to convict, and the three people who voted to acquit were black and then something about the Black Lives movement." After these representations, the trial court informed the prosecutor that she "need[ed] a race-neutral reason" for striking the venire members.

With regard to the relevant venireman, the prosecutor stated that the person was struck from the panel because she "didn't answer all the questions and appeared emotional at times." The prosecutor added that when she "asked if everyone would promise to consider all of the evidence, and if they would raise their hand[s] to do so, [the prospective juror] didn't raise her hand." The prosecutor reiterated that she asked if "everyone promise[d] to consider all of the evidence in this case, circumstantial and otherwise, and everyone on the panel raised their hand except" the prospective juror at issue. In response, appellant's counsel rejected the Commonwealth's characterization of the venire member as visibly "emotional." He also stated, "I was watching her," and "I was scanning the jury for people to raise their hands."

---

[2] The Commonwealth also peremptorily struck a second African-American member of the venire because she had a degree in criminal justice. The strike of that juror is not challenged on appeal.

The judge added that he remembered the prosecutor asking the members of the venire to raise their hands. The judge noted, "I did not scan the jury, but I did not see at that time that anybody did not raise their hand." He then asked if the challenged venire member "nod[ded]." The prosecutor did not respond to the question regarding whether the prospective juror nodded, instead reiterating that "[s]he didn't raise her hand." The trial court held that the Commonwealth provided race-neutral reasons, and it allowed the peremptory strike. Neither the appellant's counsel nor the trial court recognized at that time that the prosecutor's argument in response to the Batson challenge did not restate the questions that she had asked the venire panel during *voir dire* with complete accuracy.

Following the jury verdict, the appellant filed a motion to set aside the verdict and to declare a mistrial, in part due to the "improper striking of black jurors during jury selection." At that time, the appellant specifically raised a discrepancy between the questions asked by the Commonwealth's attorney during *voir dire* and the question that she represented she had asked during *voir dire* when she responded to the appellant's challenge to the peremptory strike under Batson. Counsel also noted that the jurors were not asked to raise their hands if they promised to consider all of the evidence. The Commonwealth responded that the transcript did not reflect several instances when the jury panel members raised their hands, including when the prosecutor asked the panel members if they would consider the circumstantial evidence and "raised her own hand in a demonstrative way." The court denied the motion.[3]

---

[3] In denying the motion, the trial court stated in part:

> I think that the Commonwealth did give a race-neutral reason at that point. There was a—the parties came to the bench. It was argued.
>
> These decisions are made rather quickly as the Commonwealth points out and in the context of a trial and from all that was offered and argued at that time . . . .

The appellant argues on appeal that one of the reasons that the Commonwealth gave the trial court for striking the venire member—that she did not raise her hand when asked if she "promise[d] to consider all of the evidence"—was clearly pretextual. He suggests that the reason was pretextual because the prosecutor did not actually ask this question. The most similar questions asked by the prosecutor were whether the venire members would "decide this case based on what we present," would "focus on the evidence that we give," and were "comfortable considering circumstantial evidence." The prosecutor also asked the prospective jurors to raise their hands if they had "a problem" applying legal rules limiting the amount of evidence that the Commonwealth was required to present.

The appellant's assignment of error is founded on the well-recognized principle that the Constitution of the United States "forbids striking even a single prospective juror for a discriminatory purpose.'" Foster v. Chatman, 136 S. Ct. 1737, 1747 (2016) (quoting Snyder v. Louisiana, 552 U.S. 472, 478 (2008)). "As the United States Supreme Court held in Batson, the peremptory exclusion of a potential juror based solely on the juror's race 'is purposeful discrimination and a violation of the Equal Protection Clause of the Fourteenth Amendment . . . .'" Hopkins v. Commonwealth, 53 Va. App. 394, 397-98, 672 S.E.2d 890, 892 (2009) (quoting Jackson v. Commonwealth, 266 Va. 423, 435, 587 S.E.2d 532, 542 (2003)).

Indeed, "[t]he central purpose of the Fourteenth Amendment was to eliminate racial discrimination emanating from official sources in the States." Pena-Rodriguez v. Colorado, 137 S. Ct. 855, 859 (2017) (quoting McLaughlin v. Florida, 379 U.S. 184, 192 (1964)). "[D]iscrimination on the basis of race, 'odious in all aspects, is especially pernicious in the administration of justice,' damaging 'both the fact and the perception' of the jury's role as 'a vital check against the wrongful exercise of power by the State.'" Id. (first quoting Rose v.

Mitchell, 443 U.S. 545, 555 (1979); and then quoting Powers v. Ohio, 499 U.S. 400, 411 (1991)).

The Supreme Court of the United States has provided "a three-step process for determining when a strike is discriminatory," in violation of the Fourteenth Amendment. Foster, 136 S. Ct. at 1747 (citing Batson, 476 U.S. 79); see also Lightfoot v. Commonwealth, 50 Va. App. 723, 727, 653 S.E.2d 615, 617-18 (2007) (*en banc*) (discussing Batson's "three-step test"). "First, a defendant must make a prima facie showing that a peremptory challenge has been exercised on the basis of race . . . ." Foster, 136 S. Ct. at 1747 (quoting Snyder, 552 U.S. at 476). "[S]econd, if that showing has been made, the prosecution must offer a race-neutral basis for striking the juror in question . . . ." Id. (quoting Snyder, 552 U.S. at 476-77); see also Lawlor v. Davis, 288 Va. 223, 230, 764 S.E.2d 265, 274 (2014) ("Once a defendant makes a prima facie case, the burden shifts to the Commonwealth 'to produce race-neutral explanations for striking the juror.'" (quoting Juniper v. Commonwealth, 271 Va. 362, 407, 626 S.E.2d 383, 412 (2006))). "[T]hird, in light of the parties' submissions, the trial court must determine whether the defendant has shown purposeful discrimination." Foster, 136 S. Ct. at 1747 (quoting Snyder, 552 U.S. at 477). At issue in this case is the third step of the analysis.[4]

At the outset, we must address whether this assignment of error was properly preserved. Rule 5A:18 requires that an objection to a trial court's action or ruling be made timely and with specificity in order to preserve an issue for appeal. See Rule 5A:18; Nelson v. Commonwealth,

---

[4] Although the trial court did not explicitly rule that the appellant established a *prima facie* case of discrimination, the court directed the Commonwealth to provide a race-neutral reason for its peremptory strikes relating to both prospective jurors. The appellant does not argue that the Commonwealth failed to offer a race-neutral basis for the strike. "Once a prosecutor has offered a race-neutral explanation for the peremptory challenges and the trial court has ruled on the ultimate question of intentional discrimination, the preliminary issue of whether the defendant had made a *prima facie* showing becomes moot." Hopkins, 53 Va. App. at 398, 672 S.E.2d at 892 (quoting Hernandez v. New York, 500 U.S. 352, 359 (1991) (plurality opinion)).

50 Va. App. 413, 420-21, 650 S.E.2d 562, 566 (2007). The purposes of Rule 5A:18 are to allow the trial court the opportunity to "take appropriate action to correct the error" and to "'avoid unnecessary appeals by affording the trial judge an opportunity to rule intelligently on objections.'" Maxwell v. Commonwealth, 287 Va. 258, 264-65, 267, 754 S.E.2d 516, 519, 520 (2014) (quoting State Highway Comm'r v. Easley, 215 Va. 197, 201, 207 S.E.2d 870, 873 (1974)). In addition, when a party fails to obtain a ruling on a matter presented to a trial court, there is "no ruling [for this Court] to review on appeal." Schwartz v. Commonwealth, 41 Va. App. 61, 71, 581 S.E.2d 891, 896 (2003).

The facts in this case demonstrate that the Batson challenge was squarely before the trial court. The appellant challenged two of the Commonwealth's peremptory strikes as based on race. In response, with regard to the strike at issue, the Commonwealth's attorney provided three reasons for the strike. She said that she struck the prospective juror because she "appeared emotional," "didn't answer all the questions," and did not answer affirmatively by raising her hand in response to the question of whether she "promise[d] to consider all of the evidence." The appellant rejected the Commonwealth's characterization of the venire member as visibly emotional.[5] Even though at that time the appellant did not challenge the prosecutor's descriptions of the relevant question, the judge noted that he remembered the prosecutor asking the panel members to raise their hands. The judge stated, "I did not scan the jury, but I did not see at that time that anybody did not raise their hand." The trial court allowed the peremptory

---

[5] At the time, the appellant did not dispute the prosecutor's representation that the venire member did not raise her hand in response to one of the questions. The Commonwealth argues that by failing to expressly dispute the Commonwealth's attorney's statement, the appellant "agree[d]" that the prospective juror "did not raise her hand." However, the appellant did not implicitly concede the prosecutor's representation because a factual concession must be unambiguous. Cf. Jones v. Ford Motor Co., 263 Va. 237, 254, 559 S.E.2d 592, 600 (2002) ("To constitute a judicial admission, the admission must conclusively establish a fact in issue." (quoting General Motors Corp. v. Lupica, 237 Va. 516, 520, 379 S.E.2d 311, 314 (1989))).

strike. Later, after the appellant was able to review a transcript of the proceeding, he moved to set aside the verdict based on the discrepancy between the transcript and one of the particular reasons provided by the Commonwealth's attorney for the strike.

This record shows that the appellant timely objected to the Commonwealth's peremptory strike as impermissibly based on race. The Commonwealth offered race-neutral reasons for the strike. The trial court was aware that a Batson analysis was required and had the opportunity to consider whether the reasons that the Commonwealth gave for striking the prospective juror were credible and race-neutral. Although the appellant failed to ask the trial court to expressly rule on whether the Commonwealth's proffered race-neutral reasons were pretextual, the court implicitly made a finding that they were not by allowing the challenged peremptory strike. See, e.g., Groves v. Commonwealth, 50 Va. App. 57, 61-62, 646 S.E.2d 28, 30 (2007) (noting that a "judge is presumed to know the law and to apply it correctly in each case" (quoting Crest v. Commonwealth, 40 Va. App. 165, 172 n.3, 578 S.E.2d 88, 91 n.3 (2003))). See generally Henderson v. Commonwealth, 285 Va. 318, 326, 736 S.E.2d 901, 905 (2013) (inferring a circuit court's finding based on its ruling); Vinson v. Commonwealth, 258 Va. 459, 467, 522 S.E.2d 170, 175 (1999) (recognizing a circuit court's finding that was implied by its ruling). Consequently, the issue was preserved for appeal.

Turning next to the merits of the assignment of error, "[w]e review [the] denial of a motion for a mistrial for abuse of discretion." Lawlor v. Commonwealth, 285 Va. 187, 220, 738 S.E.2d 847, 866 (2013). "Once the Commonwealth offered its race-neutral explanation[s] for the strike[]," the appellant could "'nevertheless show purposeful discrimination by proving the explanations pretextual.'" Hopkins, 53 Va. App. at 399, 672 S.E.2d at 892 (quoting United States v. Joe, 928 F.2d 99, 102 (4th Cir. 1991)). "Whether the defendant has carried his burden of proving purposeful discrimination in the selection of the jury is . . . a matter to be decided by

the trial court." Avent v. Commonwealth, 279 Va. 175, 196, 688 S.E.2d 244, 256 (2010) (quoting Jackson, 266 Va. at 436, 587 S.E.2d at 542).

In conducting the analysis, great deference is afforded to the trial court, and there are sound reasons for this. "In the typical peremptory challenge inquiry," the determinative question is whether the "race-neutral explanation for a peremptory challenge should be believed." Hernandez v. New York, 500 U.S. 352, 365 (1991) (plurality opinion). The analysis must be based upon the reason or reasons provided by the Commonwealth in the trial court. Hopkins, 53 Va. App. at 400-01, 672 S.E.2d at 893 ("If the stated reason does not hold up, its pretextual significance does not fade because a trial judge, or an appeals court, can imagine a reason that might not have been shown up as false." (quoting Miller-El v. Dretke, 545 U.S. 231, 252 (2005))). Further, the determination of whether a defendant has shown purposeful discrimination is a factual one. Foster, 136 S. Ct. at 1747. "Appellate judges cannot on the basis of a cold record easily second-guess a trial judge's decision about likely motivation." Davis v. Ayala, 135 S. Ct. 2187, 2201 (2015) (quoting Rice v. Collins, 546 U.S. 333, 343 (2006) (Breyer, J., concurring)). In short, appellate courts should "defer to the trial court" regarding "these determinations of credibility and demeanor . . . in the absence of exceptional circumstances." Id. (quoting Snyder, 552 U.S. at 477). Therefore, this Court will reverse such determinations only if the trial court's decision was "clearly erroneous."[6] Avent, 279 Va. at 196, 688 S.E.2d at 256 (quoting Jackson, 266 Va. at 437, 587 S.E.2d at 543); see also Davis, 135 S. Ct. at 2199 (noting

---

[6] As the determination of an attorney's credibility is a finding of fact, this Court also has described the standard of review in different terms: "questions of fact are binding on appeal unless 'plainly wrong.'" See McGee v. Commonwealth, 25 Va. App. 193, 198 n.1, 487 S.E.2d 259, 261 n.1 (1997) (en banc) (implicitly equating the term "clear error," which derives from Federal Rule of Civil Procedure 52(a) and applies to the review of questions of fact in the federal system, with the term "plainly wrong," the standard under which findings of fact are reviewed in Virginia's courts) (quoting Quantum Div. Co. v. Luckett, 242 Va. 159, 161, 409 S.E.2d 121, 122 (1991)); Robertson v. Commonwealth, 18 Va. App. 635, 640, 445 S.E.2d 713, 716 (1994). In this case, the trial court's decision was neither "clearly erroneous" nor "plainly wrong."

that a trial court's "finding regarding the credibility of an attorney's explanation . . . may be reversed only if the trial judge is shown to have committed clear error").

The trial court decided that the prosecutor's race-neutral reasons were credible, and that determination was not clearly erroneous. The judge, who was in the best position to consider "the demeanor of the attorney who exercise[d] the challenge," twice determined that based on everything before him, the prosecutor did not act with discriminatory intent when providing race-neutral reasons for the strike. See Hernandez, 500 U.S. at 365.

The appellant argues that the fact that the prosecutor did not actually ask the venire members to "raise their hand[s]" if they "promise[d] to consider all of the evidence," in direct contradiction of her representation to the trial court, plainly shows that the race-neutral reasons were pretextual.[7] He suggests that the reason given concerning the question was pretextual and thus the other reasons given were by extension also pretextual. However, the appellant's argument discounts the fact that a prosecutor may be both mistaken and genuine.[8] An inaccuracy such as the one in this case is relevant to determining the prosecutor's credibility but does not as a matter of law compel the conclusion that the reason given is pretextual. Compare Blackman v. State, 414 S.W.3d 757, 770 (Tex. Crim. App. 2013) (holding that a prosecutor's race-neutral reason can be genuine, even if premised on a mistake), with Foster, 136 S. Ct. at 1748-55 (holding that the state's numerous race-neutral explanations were directly contradicted by the

---

[7] The appellant initially challenged the peremptory strike in the trial court based on a proffer of a hearsay statement purportedly made by the prosecutor to former defense counsel. He provided no evidence supporting this hearsay allegation and does not rely on it on appeal.

[8] In light of this holding, we do not address the further explanation given in the Commonwealth's response to the appellant's motion to set aside the verdict that the prosecutor raised her hand "demonstrative[ly]" when she asked the members of the panel if they were "comfortable considering circumstantial evidence" and "the jurors followed suit." See, e.g., Commonwealth v. Swann, 290 Va. 194, 196, 776 S.E.2d 265, 267 (2015) (noting that appellate courts decide cases on the "*best and narrowest* ground[] available" (emphasis added) (quoting McGhee v. Commonwealth, 280 Va. 620, 626 n.4, 701 S.E.2d 58, 61 n.4 (2010))).

record, including notes in the prosecution's file regarding which of the prospective jurors were African-American).  The prosecutor's representation that she instructed the venire members to raise their hands if they promised to consider all the evidence was inaccurate.  The record shows that she had in fact asked them to respond with a "yes" to the question of whether they would focus on the evidence presented to them and asked them to raise their hands in response to a different question.  However, the represented question was sufficiently similar to the question asked and was race-neutral.  In the context of these facts, the race-neutral reasons given were not pretextual as a matter-of-law.

Additionally, the trial court's implicit determinations, both before and after the inaccuracy was discovered, that the prosecutor was credible in giving the race-neutral reasons was not clear error.  No evidence in the record demonstrates that the trial court erred in deciding that the prosecutor did not purposefully discriminate based on race in striking the juror from the jury panel.  The prosecutor represented that the venire member did not raise her hand when asked if she "promise[d] to consider all of the evidence," but as was later discovered, the prosecutor actually asked similar questions that involved how the prospective jurors would view the evidence.  The prosecutor also asked the prospective jurors to raise their hands if they had "a problem" applying legal rules limiting the amount of evidence that the Commonwealth was required to present.  This record supports the trial court's determination that the Commonwealth's race-neutral reasons for the peremptory strike were not pretextual.  See generally Davis, 135 S. Ct. at 2201 (holding that appellate courts usually should defer to trial courts' credibility determinations of prosecutors); Miller-El v. Cockrell, 537 U.S. 322, 338-39 (2003) (noting that appellate deference stems from the trial court's better position to judge the credibility of a prosecutor).  Accordingly, the trial court acted within its discretion by denying

the motion to set aside the verdict and declare a mistrial based on the appellant's <u>Batson</u> challenge.

## B.  Juror Conduct

The appellant suggests that the trial court erred by denying his motion for a mistrial based on juror misconduct.  The appellant also claims that the trial court erred by failing to investigate the alleged misconduct.  The Commonwealth responds that the trial court appropriately refused to "investigate the inner workings of the jury room" and correctly denied the motion for a mistrial.

During the second day of jury deliberations, the trial court reconvened outside the presence of the jury.  The judge informed the parties that a juror told the bailiff "through tears that she feels she's being bullied."  The appellant made a motion for a mistrial, arguing that based on this information "any verdict would be tainted."

The trial court denied the motion.  However, the court did instruct the jury in accordance with <u>Allen v. United States</u>, 164 U.S. 492, 501-02 (1896).  The court stated:

> You should not surrender your honest belief as to the weight or effect of evidence solely because of the opinions of other jurors, or for the mere purpose of reaching a unanimous verdict.
>
> It is your duty as jurors, however, to consult with one another and to deliberate with a view to reaching an agreement, if you can do so without violence to individual judgment.
>
> Each of you must consider the case for yourself.
>
> . . . .
>
> [I]n conferring together, each of you should pay due attention and respect to the views of the others and listen to each other's arguments with a disposition to re-examine your own views.
>
> . . . .

Remember[] at all times that no juror is expected to yield a conscientious belief that he or she may have as to the weight or the effect of the evidence. But remember also that after full deliberation and consideration of all the evidence in the case, it is your duty to agree upon a verdict if you can do so without violating your individual judgment and your conscience.

After the jury left the courtroom to resume deliberations, the appellant renewed the motion for a mistrial, arguing that one of the jurors was "very upset and distressed." The court again denied the motion.

After the jury returned its verdict, the trial court polled the jury. The court instructed each juror to "answer yes or no to the verdict that has just been read." Every juror responded "yes" to the verdict. The appellant requested permission to question a particular juror, and the court responded, "Not at this point." The jury retired, and the appellant again asked to question the juror. The trial court denied the request. The court also denied the appellant's subsequent motion to set aside the verdict due to "juror coercion."

In logical sequence, the first question in resolving this assignment of error is whether the trial court erred by failing to investigate possible juror misconduct. "In this Commonwealth we have . . . sought to uphold the sanctity of the jury verdict." Smithey v. Sinclair Ref. Co., 203 Va. 142, 145, 122 S.E.2d 872, 875 (1961). Virginia diligently protects "the inviolability and secrecy of jurors' deliberations."[9] Jenkins v. Commonwealth, 244 Va. 445, 460, 423 S.E.2d 360, 370 (1992) (quoting Caterpillar Tractor Co. v. Hulvey, 233 Va. 77, 82, 353 S.E.2d 747, 750 (1987)); see also Caterpillar Tractor Co., 233 Va. at 82, 353 S.E.2d at 751 (noting that allowing juries to impeach their own verdicts would incentivize jury tampering).

---

[9] Consequently, juror deliberations are treated differently than questions regarding whether the jury was influenced by a third party or information extraneous to that produced at trial. See, e.g., Evans v. Commonwealth, 39 Va. App. 229, 238-39, 572 S.E.2d 481, 485-86 (2002).

- 13 -

As a result, "a juror is precluded from testifying as to any matter or statement occurring during the course of the jury's deliberations."[10] Va. R. Evid. 2:606; see also Jenkins, 244 Va. at 460, 423 S.E.2d at 370 (explaining that jurors should not be called to testify about discussions during deliberation). However, protections are in place to ensure that a jury verdict represents the understanding and agreement of all of the jurors. Baltimore & Ohio R.R. Co. v. Polly, Woods & Co., 55 Va. (14 Gratt.) 447, 473 (1858). "Once the jury has returned its verdict 'in open court,' a defendant has a right to have the jury 'polled individually,' to confirm that each juror joins in the verdict and that it is, in fact, unanimous." Humbert v. Commonwealth, 29 Va. App. 783, 792, 514 S.E.2d 804, 808 (1999) (quoting Rule 3A:17). "The trial court may require each juror to vote yes or no without opportunity for explanation." Id. "There is no right to a special poll to inquire how or why each juror arrived at the verdict."[11] Id. (quoting Shepperson v. Commonwealth, 19 Va. App. 586, 592, 454 S.E.2d 5, 9 (1995)).

Here, the trial court polled each juror for a yes or no vote to confirm the jury verdict. The jurors all replied yes without equivocation. The appellant was not entitled to further inquiry regarding how a particular juror arrived at the verdict. Consequently, the trial court acted appropriately by refusing to allow the appellant to ask one of the jurors a question after the poll.

_____

[10] The instant case does not involve a showing or suggestion that any juror made a racially biased statement. Consequently, we need not consider the limited constitutional exception that the Supreme Court has recognized in the event of a "showing that one or more jurors made statements exhibiting overt racial bias that cast serious doubt on the fairness and impartiality of the jury's deliberations and resulting verdict." Pena-Rodriguez, 137 S. Ct. at 869; see also Va. R. Evid. 2:606(b)(ii) (effective July 1, 2018) (allowing a juror to testify about the matter if during deliberations another juror made a statement "exhibiting overt racial/national origin bias – tending to show that a racial/national origin stereotype or animus was a significant motivating factor in the juror's vote and casting serious doubt on the fairness and impartiality of the jury's deliberations or the verdict").

[11] However, if a juror expresses confusion during a jury poll, the trial court has "discretionary authority to ask appropriate neutral questions to clarify" that juror's response. Carver v. Commonwealth, 17 Va. App. 7, 10, 434 S.E.2d 916, 918 (1993). Such was not the case here.

The second issue with regard to this assignment of error is whether the trial court abused its discretion by denying the appellant's motion for a mistrial based on the alleged jury misconduct of "bull[ying]" a juror during deliberations. We are guided by well-established precedent. "[A] motion for a new trial on the ground of juror misconduct is addressed to the sound discretion of the trial judge." Evans v. Commonwealth, 39 Va. App. 229, 237-38, 572 S.E.2d 481, 485 (2002) (quoting Commercial Union Ins. Co. v. Moorefield, 231 Va. 260, 265, 343 S.E.2d 329, 332 (1986)). A reviewing court can conclude that "an abuse of discretion has occurred" only in cases in which "reasonable jurists could not differ" about the correct result. Commonwealth v. Swann, 290 Va. 194, 197, 776 S.E.2d 265, 268 (2015) (quoting Grattan v. Commonwealth, 278 Va. 602, 620, 685 S.E.2d 634, 644 (2009)). "[B]y definition," however, a trial court "abuses its discretion when it makes an error of law." Coffman v. Commonwealth, 67 Va. App. 163, 166, 795 S.E.2d 178, 179 (2017) (quoting Commonwealth v. Greer, 63 Va. App. 561, 568, 760 S.E.2d 132, 135 (2014)).

On appeal, a trial court's denial of a motion for a mistrial will not be reversed "unless there exists a manifest probability that the denial of a mistrial was prejudicial." Humbert, 29 Va. App. at 792, 514 S.E.2d at 808 (quoting Carver v. Commonwealth, 17 Va. App. 7, 10, 434 S.E.2d 916, 917 (1993)). When possible juror misconduct is the issue on appeal, the appellant carries the burden of establishing "a *probability of prejudice* to the accused." See Jackson v. Commonwealth, 267 Va. 178, 199, 590 S.E.2d 520, 531-32 (2004) (emphasis added).

"The circuit court is authorized to discharge the jury either when it appears that the jurors cannot agree on a verdict . . . or when there is a manifest necessity for such discharge."[12] Prieto v. Commonwealth, 278 Va. 366, 386, 682 S.E.2d 910, 920 (2009). This "power to discharge a jury is discretionary and the court must exercise [it] carefully, according to the circumstances of the case." Id. "The object of the law is to obtain a fair and just verdict, and whenever it shall appear to the court that the jury impanelled cannot render such a verdict, it ought to be discharged, and another jury impanelled." Id. (quoting Mack v. Commonwealth, 177 Va. 921, 927, 15 S.E.2d 62, 64 (1941)).

The record supports the trial court's conclusion that the verdict was "fair and just" and that there was no "manifest necessity" to discharge the jury. Here, the allegation related to behavior inside the jury room during jury deliberations. See generally Jackson, 267 Va. at 199, 590 S.E.2d at 531 (noting that typically findings of "*prejudicial* juror misconduct" are limited "to activities of jurors that occur outside the jury room" (quoting Jenkins, 244 Va. at 460, 423 S.E.2d at 370) (emphasis added)). This allegation did not go unchecked or ignored. After a juror reported to the bailiff that she felt "bullied," the trial court discussed the matter with counsel and then addressed the issue. The court instructed the entire jury on their individual responsibilities to vote in accordance with their consciences and on its responsibility as a cohesive body to listen to the opinions and arguments of others in the group. The "jury is presumed to have followed

---

[12] There is no requirement that a jury arrive at a verdict without discord. Compare United States v. Robinson, 872 F.3d 760, 772 (6th Cir. 2017) (holding that the trial court was not required to grant a mistrial where the marshal and deputy clerk "prevent[ed] a fight among the jurors" and "convince[d]" them "to return to deliberations"), Anderson v. Miller, 346 F.3d 315, 318, 329 (2d Cir. 2003) (holding in ruling on a petition for a writ of habeas corpus that the jury's conduct of yelling during deliberations did not violate the defendant's constitutional rights), and Shotikare v. United States, 779 A.2d 335, 342, 347 (D.C. Cir. 2001) (holding that the discharge of a juror for misconduct after insulting and threatening another juror did not entitle the defendant to a mistrial), with State v. Dorsainvil, 89 A.3d 584, 586, 607-09 (N.J. Super. Ct. App. Div. 2014) (holding that a mistrial was necessary after one juror slapped another because the misconduct could not be rectified by curative instructions).

the instructions of the trial court." Prieto v. Commonwealth, 283 Va. 149, 169, 721 S.E.2d 484, 496 (2012) (quoting Muhammad v. Commonwealth, 269 Va. 451, 524, 619 S.E.2d 16, 58 (2005)). In the instant case, the jury subsequently rendered a unanimous guilty verdict, and the individual jurors confirmed the verdict when they were polled. The appellant has not borne his burden of demonstrating "a probability of prejudice." In these circumstances, the trial court acted reasonably in upholding the jury verdict and did not make an error of law by doing so. Consequently, we hold that the trial court acted within its discretion by denying the appellant's motion for a mistrial.

### III. CONCLUSION

The trial court did not clearly err in determining that the prosecutor was credible in giving race-neutral reasons for the challenged peremptory strike. In addition, the trial court properly denied the appellant's request to question a juror about deliberations. Further, the court acted within its discretion by denying the appellant's motion for a mistrial based on the alleged juror misconduct. For these reasons, we affirm the appellant's conviction for first-degree murder.

Affirmed.