COURT OF APPEALS OF VIRGINIA

Present: Chief Judge Decker, Judges Raphael and White
Argued at Richmond, Virginia

BRIAN LELAND ARTIS

v.      Record No. 1703-23-2

COMMONWEALTH OF VIRGINIA

MEMORANDUM OPINION* BY
CHIEF JUDGE MARLA GRAFF DECKER
NOVEMBER 6, 2024

FROM THE CIRCUIT COURT OF CHESTERFIELD COUNTY
David E. Johnson, Judge

Kevin E. Calhoun for appellant.

Matthew P. Dullaghan, Senior Assistant Attorney General (Jason S.
Miyares, Attorney General, on brief), for appellee.


Brian Leland Artis appeals his convictions for one count each of soliciting prostitution

with a minor and "[a]iding [the] prostitution" of a minor and two counts of indecent liberties

with a child by a person in a custodial or supervisory relationship in violation of Code

§§ 18.2-346.01(i), -348, and -370.1. He challenges the trial court's limitation of his

cross-examination of the teenaged victim, as well as the sufficiency of the evidence to prove all

three categories of convictions. We hold that the trial court's admissibility ruling was not error.

We conclude further that, to the extent Artis preserved his sufficiency challenges for appeal, the

evidence proved his guilt of those crimes. As a result, his convictions are affirmed.

_____

* This opinion is not designated for publication. *See* Code § 17.1-413(A).

BACKGROUND[1]

In the fall of 2020, when K.H. was sixteen years old, she was a resident in a group home, which was divided into girls' and boys' sections.[2] Artis was on the staff at the home, where he worked as a director. He primarily "tend[ed] to the boys['] part of the home," but he was also present in the girls' part of the home at times. When he was there, "it [was] expected that everybody would listen to . . . the instructions that he gave to the girls."

While K.H. was at the group home, Artis would say "weird stuff" to her. He told her she was "sexy," and he "offered that [she] could run away with him." At some point while K.H. was there, her phone was taken away, and she "got mad." As a result, she "decide[d] to take [Artis] up on th[e] offer" to run away. While K.H. was still in the group home, Artis told her that he would "basically buy [her] everything" and "pay for everything for [her]" after she left. He also said, though, that "nothing is free in this world" and K.H. "might as well keep him happy."

On October 17, 2020, K.H. met Artis outside the group home. He drove her to a Chesterfield hotel, and once there, he "start[ed] . . . touching" her. Artis and K.H. had sexual intercourse, and he spent the night. The next day, he bought her a cell phone, and he later communicated with her by phone. K.H. "agree[d] to have sex with" Artis because she "needed the money" and other things he provided, including food, "hygiene stuff, the hotel, [and] the phone." Artis also bought her "Black and Milds," "edible[]" "weed," and alcohol.

While K.H. was at the hotel, Artis visited her every other day, had sexual intercourse with her "multiple times," and performed oral sodomy on her. K.H. did not know anyone else in

---

[1] "On appellate review of the sufficiency of the evidence to support a criminal conviction, this Court 'reviews the evidence in the light most favorable to the Commonwealth, as the prevailing party at trial, and considers all inferences fairly deducible from that evidence.'" *Thornton v. Commonwealth*, 78 Va. App. 321, 328 (2023) (quoting *Commonwealth v. Herring*, 288 Va. 59, 66 (2014)).

[2] The victim and another minor are identified using initials to protect their privacy.

the area and said that without Artis's financial support, she would have been "[o]n the streets." She stayed at the hotel for about a week.

K.H. decided to leave the hotel because she was uncomfortable having sex with Artis. At her request, he drove her to Alexandria, where she "end[ed] up in another group home." She later ran away from that home with a second girl, R.K. The teens were living "in the streets" with "nowhere to stay." In mid-November 2020, K.H. contacted Artis for help. He picked up both girls and drove them back to the Chesterfield hotel.

When K.H. returned to the hotel, Artis again wanted to have sex with her and sent her texts to that effect. K.H., however, did not want to have sex with him. Artis texted to K.H., "We gonna need some alone time . . . if I get what I'm saying." He suggested that R.K. could "take a walk and have a smoke or whatever[,] just not inside the room." K.H. was successful in using R.K. as an excuse to avoid having sex with Artis during her November stay in the Chesterfield hotel.

Texts between K.H. and Artis on November 21, 2020, show Artis asked whether she "t[old] someone where [she] w[as] staying or put something on [Insta]gram because [the] State Police came to [the group home]." Artis said "someone told them somebody from [the home] helped [K.H.] get away the first time" and may also have helped her "get back to Richmond." He further texted that he was "going to be fucked" and "need[ed K.H. and R.K.] to get out of the hotel."

Shortly thereafter, Detective Christopher Lee of the Chesterfield County Police Department interviewed K.H. and R.K. at the hotel in the course of investigating possible sex trafficking. He learned that they were both juveniles and their hotel room was being paid for by an "adult man associated with a group home." With K.H.'s permission, Detective Lee reviewed the text messages she identified as having been sent by Artis.

- 3 -

The detective interviewed Artis, who said that "he was operating for this hotel situation under an organization that was called New Walk Ministries." Artis provided the detective with telephone numbers for two different phones he used, one of which was for New Walk Ministries. He confirmed that he worked at the group home, on the boys' side, and knew K.H. from "sometimes go[ing] to the girls' home." He admitted paying for the Chesterfield hotel room. He claimed, however, that he did so in conjunction with his work for New Walk Ministries and did not know who was staying in the room. Artis later admitted knowing that K.H. was one of the people staying in the room in November 2020, but he continued to deny knowing she was there in October.

The detective executed a search warrant for Artis's home and car. Inside the car, police found condoms and a key to the Chesterfield hotel room K.H. occupied in November.

Artis was indicted for one count of soliciting prostitution with a minor and two counts each of aiding in the prostitution of a minor and indecent liberties with a child by a person in a custodial or supervisory relationship. In a jury trial, Artis was acquitted of one of the counts of aiding the prostitution of a minor and convicted of the remaining offenses. He was sentenced to five years for each offense, for a total of twenty years, with ten years suspended.

ANALYSIS

Artis suggests that the trial court erred by limiting his cross-examination of K.H. and by rejecting his challenges to the sufficiency of the evidence to support his convictions.

I. Admissibility of Impeachment Evidence on Cross-Examination of K.H.

Artis argues the trial court improperly limited his ability to cross-examine K.H. about her drug use specifically as it impacted her memory.

While cross-examining Detective Lee, defense counsel asked about his conversations with K.H. Lee testified she "told [the police] that she had been smoking weed." The detective

explained to her that the police "weren't interested in prosecuting her" for drug offenses. He elaborated that drug crimes were considered "very minor . . . in comparison to . . . sex crimes against a juvenile."

Later, while cross-examining K.H., defense counsel asked whether she had "problems remembering stuff" and told the police about her memory problems. K.H. replied that she did not "normally have trouble with [her] memory." She explained that some of the things she was being asked about on cross-examination "happened years ago," "two or three years" earlier. She further stated that she "d[id not] remember" whether she "t[old] the police that [she] ha[d] a lot of trouble with [her] memory."

Further along in K.H.'s cross-examination, defense counsel asked, "[Y]ou told the police that you not only smoked weed[] but . . . did drugs too? Do you remember what drugs you were taking?" The prosecutor objected on relevance grounds. Defense counsel replied, "As it affects her ability to recall and to accurately address the—," at which time K.H. began to answer. The court told her to "[h]old on." It then sustained the objection and instructed defense counsel to move on.

Defense counsel next asked K.H., "You told the police . . . that the amount of marijuana that you were smoking was affecting your memory, right?" K.H. said, "I don't smoke weed anymore." Defense counsel then asked, "You don't remember that part either?" Before K.H. had a chance to reply about whether she remembered telling the police that smoking marijuana affected her memory, counsel changed his line of questioning and turned to an unrelated subject. Defense counsel never returned to the issue of how marijuana smoking might have affected K.H.'s memory.

Artis now challenges the trial court's limitations on his cross-examination of K.H. He contends he should have been permitted to ask her what she told the police about smoking marijuana and taking other drugs. He suggests that these subjects were "relevant and material to show [her] poor memory" and the "overall incredibility" of her testimony. The Commonwealth

argues that Artis failed to make a proper proffer of the expected testimony and therefore cannot raise the issue on appeal.

A trial court's decision to admit or exclude evidence is reviewed for an abuse of discretion. *Jefferson v. Commonwealth*, 298 Va. 1, 10 (2019). It is axiomatic, though, that "[e]rror may not be predicated upon . . . exclusion of evidence[] unless . . . the substance of the evidence was made known to the [trial] court by proffer." Va. R. Evid. 2:103(a)(2); *see Murray v. Commonwealth*, 71 Va. App. 449, 458 (2020); *see also Whittaker v. Commonwealth*, 217 Va. 966, 969 (1977) (noting that "a unilateral avowal of counsel, if unchallenged," may "constitute[] a proper proffer"). The "range of content required" for a proper proffer "depend[s], in part, on the proffer's purpose." *Creamer v. Commonwealth*, 64 Va. App. 185, 195 (2015). It must be "sufficiently detailed" to permit the trial court "a fair opportunity 'to resolve the issue at trial.'" *Id.* at 195, 199 n.7 (quoting *Albert v. Albert*, 38 Va. App. 284, 290 n.1 (2002)). Additionally, the proffer must be adequate "to allow the appellate court to determine whether the trial court erred in excluding the evidence and, if so, whether that error was harmless." *Id.* at 195. Crucially, the appellate court "can perform this examination only when the proponent proffers the 'testimony he expected to elicit,' rather than merely his theory of the case." *Tynes v. Commonwealth*, 49 Va. App. 17, 21 (2006) (quoting *Clagett v. Commonwealth*, 252 Va. 79, 95 (1996)); *see id.* at 21 n.1. A "failure to proffer the *expected testimony* is fatal to [the] claim on appeal." *Id.* at 21 (quoting *Molina v. Commonwealth*, 47 Va. App. 338, 367-68 (emphasis added), *aff'd on other grounds*, 272 Va. 666 (2006)). The reviewing court "cannot 'speculate what the answer[s to the questions posed] might have been.'" *Id.* at 22 (quoting *O'Dell v. Commonwealth*, 234 Va. 672, 697 (1988)).

Here, regarding drug use, Artis did not proffer the testimony he expected to elicit from K.H. in response to the questions to which the prosecution objected. Defense counsel explained that he wanted to explore the issue of K.H.'s drug use as it "affect[ed] her ability to recall." He did not,

however, expressly proffer a basis for believing that K.H. would answer affirmatively that she used drugs other than marijuana during the time she stayed in the Chesterfield hotel. His question *implied* that K.H. told the police she used drugs other than marijuana, but he did not *proffer* that she made such statements to police or what other drugs were involved, and he did not elicit any such testimony from Detective Lee or any other witness. Detective Lee, to the contrary, testified only that K.H. "told [the police] that she had been smoking weed," not that she had used other drugs. In other words, defense counsel's statement of his desire "to 'explore' the subject with" the witness amounted merely to "repeat[ing] his theory of the case" rather than disclosing what K.H.'s "'testimony would have been' on this subject." *See Tynes*, 49 Va. App. at 23 (quoting *Lockhart v. Commonwealth*, 34 Va. App. 329, 340 (2001)). Under these circumstances, Artis failed to make an adequate proffer to preserve for appeal his challenge to the limitation of his cross-examination of K.H. as to her use of drugs.

Regarding K.H.'s admission to using marijuana (an admission that Detective Lee had confirmed during his testimony), defense counsel asked K.H. without objection whether she told the police that the amount of marijuana she was smoking was affecting her memory. When K.H. avoided answering the question directly, stating instead, "I don't smoke weed anymore," defense counsel abandoned that line of inquiry. Consequently, it was due to defense counsel's choice, not the trial court's ruling, that Artis did not obtain testimony from K.H. about the impact of her marijuana use on her memory of the charged offenses. *See Castillo v. Commonwealth*, 70 Va. App. 394, 461 n.28 (2019).

In light of these circumstances, we hold that Artis waived his objection to the trial court's limitation on his cross-examination of K.H. as to her use of drugs other than marijuana. And regarding marijuana use, he failed to pursue avenues of inquiry that remained open to him.

## II. Sufficiency of the Evidence

Artis contends the evidence was insufficient to prove all three categories of offenses he was convicted of committing—soliciting prostitution with a minor, aiding the prostitution of a minor, and indecent liberties with a child by a person in a custodial or supervisory relationship.

In determining whether the evidence was sufficient to support these convictions, the appellate court views the facts in the light most favorable to the Commonwealth. *See, e.g.*, *Commonwealth v. Garrick*, 303 Va. 176, 182 (2024). This deferential standard "requires us to 'discard the evidence of the accused in conflict with that of the Commonwealth[] and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences to be drawn'" from that evidence. *Vasquez v. Commonwealth*, 291 Va. 232, 236 (2016) (quoting *Bowman v. Commonwealth*, 290 Va. 492, 494 (2015)).

In conducting this review, the Court must defer to the jury's findings of fact unless they are "plainly wrong or without evidence to support [them]." *See Secret v. Commonwealth*, 296 Va. 204, 228 (2018) (quoting *Pijor v. Commonwealth*, 294 Va. 502, 512 (2017)). The appellate court "does not ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt." *Durham v. Commonwealth*, __ Va. __, __ (Aug. 1, 2024) (quoting *Pijor*, 294 Va. at 512). Instead, "[t]he only 'relevant question is . . . whether *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Garrick*, 303 Va. at 182 (alterations in original) (quoting *Commonwealth v. Barney*, 302 Va. 84, 97 (2023) (emphasis added)). If the record contains evidentiary support for the conviction, "the reviewing court is not permitted to substitute its own judgment . . . , even if its opinion might differ from the conclusions reached by the trier of fact" at trial. *Id.* at 182 (quoting *Jordan v. Commonwealth*, 286 Va. 153, 156-57 (2013)).

To the extent that the sufficiency issue on appeal requires the appellate court to determine the meaning of a statute and its terms, as applicable in this case, the court reviews that matter de novo. *See Barson v. Commonwealth*, 284 Va. 67, 71-72 (2012); *Thornton v. Commonwealth*, 78 Va. App. 321, 328 (2023). Although criminal statutes are to be strictly construed against the Commonwealth, this Court must also "give reasonable effect to the words used" in the legislation. *Johnson v. Commonwealth*, 37 Va. App. 634, 639 (2002) (quoting *Dillard v. Commonwealth*, 28 Va. App. 340, 344 (1998)). When interpreting a statute, the appellate court "presume[s] that the General Assembly chose, with care, the words that appear in [that] statute." *Jones v. Commonwealth*, 296 Va. 412, 415 (2018) (quoting *Johnson v. Commonwealth*, 292 Va. 738, 742 (2016)). Consequently, if the language is "plain and unambiguous, we are bound by [its] plain meaning." *Tisdale v. Commonwealth*, 65 Va. App. 478, 484 (2015) (quoting *Lee Cnty. v. Town of St. Charles*, 264 Va. 344, 348 (2002)); *see Jones*, 296 Va. at 415 (quoting *Alston v. Commonwealth*, 274 Va. 759, 769 (2007)). "When a 'statute's terms are undefined' by the legislature, the Court gives those terms 'their "ordinary meaning," in light of "the context in which [they are] used."'" *Green v. Commonwealth*, 72 Va. App. 193, 203 (2020) (quoting *Va. Marine Res. Comm'n v. Chincoteague Inn*, 287 Va. 371, 384 (2014) (alteration in original)).

It is under these well-established legal principles that we review Artis's challenges to the sufficiency of the evidence.

### A. Solicitation of a Minor for Prostitution

Code § 18.2-346.01 provides in pertinent part that "[a]ny person who offers money or its equivalent to another for the purpose of engaging in" certain specified sexual acts "and thereafter does any substantial act in furtherance thereof is guilty of solicitation of prostitution."

Artis does not dispute that he engaged in sexual intercourse and cunnilingus with K.H. or that he gave her "money or its equivalent." He contends only that the evidence did not prove he

"offer[ed her] anything . . . specifically in exchange for [the] sex."  He suggests instead that he gave her money and gifts as support, with only "the vague hope, . . . not a specific agreement, that [she] would have sex with him."  He argues that soliciting prostitution requires a quid pro quo—a direct trading of money or other items for sex.  Despite conceding generally that the offer or request proving solicitation may be "express or implied," he contends that the evidence does not support his conviction because he "did not say 'I will buy you everything you need but only if you have sex with me.'"

The crime of solicitation proscribed by Code § 18.2-346.01 does not require an agreement.[3]  It defines the offense as "*offer[ing]* money or its equivalent to another for the purpose of engaging in" certain specified sexual acts, including sexual intercourse.  Code § 18.2-346.01 (emphasis added) (incorporating the acts in Code § 18.2-346); *see* Code § 18.2-346.  Relevant dictionary definitions of "offer" as a transitive verb are "[t]o present for acceptance or rejection," as to tender; "[t]o put forward for consideration," as to suggest; and "[t]o propose as payment," as to bid or offer a specific amount of money.  *Offer*, *The American Heritage Dictionary of the English Language* (5th ed. 2011); *see Offer*, *Webster's Third New International Dictionary of the English Language* (1993).  In contract terms, an offer is "a conditional promise."  *Richmond Eng'g & Mfg. Corp. v. Loth*, 135 Va. 110, 153 (1923) (quoting 1 Samuel Williston, *The Law of Contracts* § 25 (1920)); *see Webster's*, *supra*.  It is "a statement by the offer[o]r that he will give a return for some promise or act of the offeree."  *Richmond Eng'g*, 135 Va. at 152-53 (quoting *Williston*, *supra*).  In this context, "the offeror's statement

---

[3] Until July 1, 2021, the crime proscribed in Code § 18.2-346.01 was instead contained in Code § 18.2-346(B).  *See* 2021 Va. Acts Spec. Sess. I ch. 188.  As of that date, the General Assembly removed subsection (B) from Code § 18.2-346 and created the new Code § 18.2-346.01 containing the same offense with the same punishment.  *See id.*  That punishment is heightened if the person solicited is a minor.  *See* Code § 18.2-346.01.

necessarily looks to the future . . . [and is] promissory in [its] terms." *Id.* at 153 (quoting *Williston*, *supra*).

As Artis concedes, the statute does not require the offer to be express. *See Thornton*, 78 Va. App. at 332-33 (implicitly acknowledging the adequacy of an *implied* "offer to exchange money for sex" to prove solicitation in violation of former Code § 18.2-346). As with any element of a crime, both direct and circumstantial evidence can serve as proof. *See Lambert v. Commonwealth*, 70 Va. App. 54, 65 (2019), *aff'd*, 298 Va. 510 (2020). "Direct evidence is offered to prove as a fact the point in issue. Circumstantial evidence, by contrast, is offered to prove a fact not directly in issue[ but] from which a fact in issue may reasonably be inferred." *Commonwealth v. Hudson*, 265 Va. 505, 512 (2003). Circumstantial evidence may include the accused's statements and conduct both before and after the events that constituted the charged crime. *See Simon v. Commonwealth*, 58 Va. App. 194, 206 (2011).

"[I]n an appellate court's assessment of a sufficiency challenge, circumstantial evidence 'is as competent . . . as direct evidence' to prove the elements of a crime, 'provided it is sufficiently convincing to exclude every reasonable hypothesis except that of guilt.'" *Young v. Commonwealth*, 70 Va. App. 646, 653 (2019) (second alteration in original) (quoting *Simon*, 58 Va. App. at 206). The Commonwealth, however, is required to exclude "only . . . reasonable hypotheses of innocence that flow from the evidence, not those that spring from the imagination of the defendant." *Simon*, 58 Va. App. at 206 (quoting *Hamilton v. Commonwealth*, 16 Va. App. 751, 755 (1993)). "The reasonable-hypothesis principle . . . is 'simply another way of stating that the Commonwealth has the burden of proof beyond a reasonable doubt.'" *Commonwealth v. Moseley*, 293 Va. 455, 464 (2017) (quoting *Hudson*, 265 Va. at 513). And "[a]nswering that question is the province of [the] factfinder, whether judge or jury, in [the] trial court. . . . [F]or an appellate court, '[t]he only "relevant question is . . . whether *any* rational trier of fact could

- 11 -

have found the essential elements of the crime beyond a reasonable doubt."'" *Garrick*, 303 Va. at 182 (sixth and seventh alterations in original) (quoting *Barney*, 302 Va. at 97 (emphasis added)).

Here, the evidence proved that while K.H. was living in the group home, Artis told her that she was "sexy" and specifically "offered that [she] could run away with him." When she told Artis she wanted to take him up on his offer, he said that he would "pay for everything" for her. He expressly conditioned his offer by explaining that "nothing is free in this world" and K.H. "might as well keep him happy." Then, on October 17, 2020, the first night they arrived in the hotel room Artis had rented for K.H., he "start[ed] . . . touching" her and had sexual intercourse with her. He returned every other day while she was staying there during October 2020, and he engaged in sexual activity with her on each of those occasions. K.H. conveyed her understanding about the conditions attached to Artis's offer when she testified that she had sex with him in the hotel room that first night and on subsequent occasions because she "needed the money" and "other things," including food, "hygiene stuff, the hotel, [and] the phone." She specifically testified that she took money from Artis in exchange for having sex with him. She further confirmed her understanding that the sex and financial support were connected by testifying that she decided to leave the hotel because she was uncomfortable continuing to have sex with Artis. This evidence supports findings that Artis both offered and provided money and its equivalent in exchange for sex.

Additional evidence proved that the terms of Artis's offer were the same when K.H. called him in mid-November 2020 to pick her up in a different city, where she was living on the street, and return her to the Chesterfield hotel.[4] R.K., a female acquaintance of K.H., stayed with

---

[4] The single indictment for soliciting prostitution charged that the criminal acts occurred "on or about October 17, 2020 through November 24, 2020." (Emphasis omitted).

her at the hotel during that time frame. K.H. testified that she knew Artis again expected to have sex with her. Although K.H. was able to avoid having sex with Artis during her November hotel stay, the evidence proved he once again expected to have sex with K.H. in exchange for providing her with money, food, lodging, and other things. K.H. confirmed his "message in [her] phone" indicated that "he wanted to." In that message, he texted that he and K.H. would "need some alone time" and R.K. would have to leave the room. He then expressed displeasure when K.H. said the other girl would not leave. Artis declined when K.H. sent a reply text offering a "3 sum," saying, "i ain't ask for all that . . . . that's on y[']all." He also replied, "Yeah," to K.H.'s request that he bring a condom, indicating he expected to have sex with her.

Although Artis did not state expressly that engaging in sexual activity was a condition of his paying for everything for K.H., that condition was strongly implied in his statements and actions, coupled with K.H.'s testimony about her understanding of his statements and actions. The evidence, therefore, viewed under the proper standard, supports the fact finder's determination that the requisite nexus existed between Artis's offer of financial assistance and the statutorily enumerated sexual activity. Consequently, we hold the evidence was sufficient to prove the challenged element of Artis's conviction for solicitation of a minor for prostitution in violation of Code § 18.2-346.01.

### B. Aiding the Prostitution of a Minor

Code § 18.2-348, referred to as aiding prostitution, provides in pertinent part that it is "unlawful for any person . . . to take or transport . . . any person to a place . . . used or to be used for the purpose of . . . prostitution within the Commonwealth or to procure or assist in procuring [any person] for the purpose of illicit sexual intercourse, anal intercourse, cunnilingus, fellatio, or anilingus."[5]

---

[5] The statute contains a knowledge requirement that is not in dispute in this case.

At trial, at the close of the Commonwealth's evidence, defense counsel made a motion to strike all three categories of crimes, including the two charges of aiding the prostitution of a minor. The court took the motion under advisement with regard to all of the charges.

Artis opted not to present evidence. Defense counsel renewed his motion to strike and presented additional argument. The court denied Artis's motion to strike with regard to the solicitation of prostitution and the indecent liberties offenses. With regard to the charges of aiding the prostitution of a minor in violation of Code § 18.2-348, however, the court "continue[d] to take under advisement the motion to strike."

Thereafter, Artis did not renew his motion to strike the charges of aiding the prostitution of a minor. The jury convicted him of the count that occurred in October 2020. Defense counsel did not make any post-trial motions challenging the sufficiency of the evidence to prove any of the offenses. The record consequently reflects that the trial court never ruled on the challenge to the sufficiency of the evidence to prove aiding the prostitution of a minor. Further supporting this conclusion are the pages in the record Artis cites on brief to show where he suggests he preserved the assignment of error for appeal. *See* Rule 5A:20(c). The brief cites only pages of the trial transcript, culminating with the page on which the court stated that it "continue[d] to take" the motion to strike the indictments under Code § 18.2-348 (aiding the prostitution of a minor) "under advisement."

Rule 5A:18 provides that "[n]o ruling of the trial court . . . will be considered as a basis for reversal unless an objection was stated with reasonable certainty at the time of the ruling, except for good cause shown or to enable this Court to attain the ends of justice." The purpose of the rule is "to protect the trial court from appeals based upon undisclosed grounds, to prevent the setting of traps on appeal, to enable the trial [court] to rule intelligently, and to avoid unnecessary reversals and mistrials." *Bethea v. Commonwealth*, 297 Va. 730, 744 (2019)

- 14 -

(quoting *Palmer v. Atl. Coast Pipeline, LLC*, 293 Va. 573, 579 (2017)), *aff'g* 68 Va. App. 487 (2018). A corollary to Rule 5A:18 is that, in addition to *presenting* the disputed issue to the trial court, the party has an affirmative duty to *obtain a ruling* from the trial court on the issue. *See Schwartz v. Commonwealth*, 41 Va. App. 61, 71 (2003) (holding that consideration of an appellant's claim of trial court error on appeal was barred by Rule 5A:18 in part "because the circuit court never ruled upon his motion"), *aff'd on other grounds*, 267 Va. 751 (2004); *Bethea*, 68 Va. App. at 498; *see also Juniper v. Commonwealth*, 271 Va. 362, 383-84 (2006) (observing that failure to request a ruling from the trial court on a motion resulted in a waiver). Obtaining a ruling is important because the appellate court reviews the record for trial court error. If the trial court has not ruled on the issue, there is nothing to review. In short, an appellant's failure to obtain a ruling below precludes the appellate court from considering the issue. *See Schwartz*, 41 Va. App. at 71.[6]

Here, the issue is the sufficiency of the evidence to prove the offense of aiding prostitution. In a jury trial, a defendant preserves a sufficiency challenge by making a motion to strike the evidence made at the appropriate time or by making a motion to set aside the verdict. *See Rompalo v. Commonwealth*, 72 Va. App. 147, 155 & n.2 (2020), *aff'd per curiam*, 299 Va. 683 (2021); *see id.* at 155-56 & n.3 (noting that in a jury trial, closing arguments are "made to the jury, not the trial court, and therefore do not preserve [an] issue [raised in closing] for appeal"). The objection presented by the motion to strike or to set aside the verdict is preserved by obtaining the trial court's ruling on it. *See Schwartz*, 41 Va. App. at 71.

---

[6] We acknowledge the provision of Rule 5A:20(c) that permits an appellant to assign error to a trial court's "failure . . . to rule on any issue." But the rule further provides that to raise this point, "error must be assigned to such failure to rule" and must "specify[] the opportunity that was provided to the . . . court to rule." Artis has not assigned error on this basis.

Artis made a motion to strike at the close of the Commonwealth's case and renewed it after he opted not to present any evidence of his own. But the trial court took both motions under advisement without ruling on them. Artis did not obtain a ruling on the motions or present his sufficiency challenge to the trial court in any other way, such as by making a motion to set aside the verdict after the jury found him guilty. As a result, his challenge to the conviction for aiding prostitution is waived, and we do not consider it on appeal.[7]

### C. Custodial Indecent Liberties

Code § 18.2-370.1 proscribes various sexual acts with "a child under the age of 18" by a "person 18 years of age or older who . . . maintains a custodial or supervisory relationship over" the minor. Artis challenges the sufficiency of the evidence to prove his two convictions under this code section, contending the Commonwealth did not establish that he had the required custodial or supervisory relationship over K.H.

The purpose of Code § 18.2-370.1 "is to protect minors from adults who might exploit certain types of relationships." *Linnon v. Commonwealth*, 287 Va. 92, 98 (2014) (quoting *Sadler v. Commonwealth*, 276 Va. 762, 765 (2008)). To "determin[e] whether a given relationship falls within the statute," the "key question . . . is whether the defendant 'had the responsibility for and control of the [minor's] safety and well-being.'" *Id.* (quoting *Krampen v. Commonwealth*, 29 Va. App. 163, 168 (1999)). The statute "does not require the specific entrustment of the child to the care of the adult to create a custodial or supervisory relationship." *Guda v. Commonwealth*,

---

[7] Because the challenge to this conviction is waived, we do not consider whether Artis violated Code § 18.2-348, as charged in the indictment, by "unlawfully . . . tak[ing] or transport[ing] any person under the age of 18 to a place . . . used or *to be used for the purpose of prostitution* . . . [or] illicit sexual intercourse." (Emphasis added). *See generally* Code § 18.2-346 (defining the crime of prostitution); Jury Instr. 13 (in the context of the solicitation offense, defining prostitution as an exchange of money or its equivalent for acts including "cunnilingus, fellatio, or sexual intercourse"); Part II.A., *supra* (observing in the context of the solicitation offense that the evidence proved Artis provided K.H. with money and its equivalent in exchange for sex and told her before transporting her to the hotel that he would do so).

42 Va. App. 453, 459 (2004). Rather, the relationship may arise through "a voluntary course of conduct." *Id.* at 460 (quoting *Snow v. Commonwealth*, 33 Va. App. 766, 773 (2000)). "As a general rule," the statute includes "primary and secondary school administrators and teachers," *Linnon*, 287 Va. at 99, as well as school security officers, athletic instructors, and babysitters, *Guda*, 42 Va. App. at 458, 460. And an adult in such a role may have a custodial or supervisory relationship over all students in a school for purposes of the statute. *See Linnon*, 287 Va. at 99 (holding the statute covered a teacher who supervised students not assigned to his class while in the cafeteria and on the sidewalk). Artis's role as a director at the group home was analogous to these types of positions in that he, too, had "responsibility for and control o[ver K.H.'s] safety and well-being." *Id.* at 98 (quoting *Krampen*, 29 Va. App. at 168).

In defining the term "custodial or supervisory relationship" as used in Code § 18.2-370.1, the Supreme Court of Virginia has held that "harmful exploitation" under the statute "is not limited to incidents occurring *during* the activity upon which the relationship is based." *Sadler*, 276 Va. at 765 (emphasis added). In *Sadler*, the Court upheld the conviction of the defendant, the coach of a "traveling softball team" who abused a player while she was alone with him in her home as he showed her new team uniforms. *Id.* at 765-66. It provided as an additional example of behavior proscribed by the statute a situation in which "a coach of a sports team . . . invite[s] a team member to the coach's home to mow the grass and, during that time, engage[s] in conduct proscribed by Code § 18.2-370.1." *Id.* at 765. The Court explained that although "[m]owing the lawn is not associated with the sports activity, nevertheless, the team member may still feel compelled to obey the coach, thus allowing the coach to exploit the relationship." *Id.* Expanding on this analysis, the Court held that "[w]hether such a relationship exists at the time of the offending conduct is a matter of fact to be determined on a case by case basis." *Id.*

Of course, the jury's resolution of conflicting facts, as well as of competing inferences, deserves "the highest degree of appellate deference." *Thomas v. Commonwealth*, 48 Va. App. 605, 608 (2006). "'If there is evidence to support the conviction,' [the appellate court] will not substitute [its] judgment for that of the trier of fact, even were [its] opinion to differ." *Wactor v. Commonwealth*, 38 Va. App. 375, 380 (2002) (quoting *Commonwealth v. Presley*, 256 Va. 465, 466 (1998)).

Artis suggests that he did not have a custodial or supervisory relationship over K.H. at the group home because "his primary role was over the boy[s'] side of the home." His use of the modifier "primary," however, reflects his recognition that he also had a role in the girls' side of the home where K.H. resided. The evidence, viewed under the proper standard, confirms this role. K.H. testified that when Artis was on the girls' side of the home, she and the other female residents listened to and obeyed his directions because he was "one of the staff." He was "above" all of the "kids" who were residents, and "it [was] expected that everybody would listen to . . . the instructions that he gave to the girls in the home." The evidence therefore supports the jury's factual finding that Artis occupied the required custodial or supervisory relationship over K.H.

Artis argues next that he was not in a custodial relationship with K.H. at the time of the sexual acts. He contends that K.H. "came up with the idea herself to run away from the group home" and, as a result, "any custodial or supervisory relationship he had over [her] as a counselor of the group home ended when she ran away." The facts and the law show otherwise. First, the evidence establishes that Artis told K.H. she was "sexy" and that he was the one who initiated discussions with K.H. about her running away with him. Only after he first did so did K.H. again raise the subject. While they remained in the group home where Artis maintained a custodial or supervisory relationship over K.H., Artis first offered, and then affirmatively agreed,

to help her leave. He further told K.H., a minor, that he would "basically buy [her] everything, pay for everything for" her, in essence increasing his level of responsibility for her. At the same time, he added that "nothing is free in this world" and that she "might as well keep him happy." As a result, he made clear to K.H., while he maintained a direct custodial or supervisory relationship over her inside the group home, what the price of his assistance outside the group home, financial and otherwise, would be. It is clear that "harmful exploitation" under the statute "is *not* limited to incidents occurring *during* the activity upon which the relationship is based." *Sadler*, 276 Va. at 765 (emphases added). Artis's behavior here was in fact more predatory than the manipulation that occurred in *Sadler* because K.H. was living in a group home without familial or financial support and therefore was in a particularly vulnerable position both emotionally and financially.

The evidence as a whole, therefore, supports the jury's finding that Artis had the requisite custodial or supervisory relationship over K.H.

CONCLUSION

We hold that Artis failed to preserve two of his assignments of error for appeal. As to the admissibility challenge, he waived it because he did not make an adequate proffer of the witness's expected answers or pursue related lines of questioning that remained open to him. With regard to his challenge to the sufficiency of the evidence to prove aiding the prostitution of a minor, he never obtained a ruling from the trial court, similarly waiving that claim. Finally, we conclude on the merits that the evidence was sufficient to support his convictions for soliciting a minor for prostitution and indecent liberties. As a result, Artis's convictions are affirmed.

*Affirmed.*